[Civ. No. 6433. Third Dist. June 4, 1942.]

PATRICIA DRISCOLL, Appellant, v. EAST - WEST DAIRYMEN'S ASSOCIATION (a Corporation) et al., Respondents.

John J. Taaffe, C. Ray Robinson, Willard B. Treadwell, Mathew O. Tobriner and George B. Harris for Appellant.

J. L. Royle and F. M. Ostrander for Respondents.

THE COURT.—The case was presented in the trial court upon an agreed statement of facts supplemented by evidence illustrative and in elaboration of the agreed statement. There is little dispute as to the facts, the question here presented being one of construction.

The plaintiff is the assignee of a large number of persons, and her rights depend entirely upon the rights of her assignors. We will hereafter use the term "plaintiff," without regard to any assignment, treating plaintiff as though she were pursuing her individual cause, giving to her the status of her assignors. The defendant Dairymen's Association is a non-profit organization created and existing under the laws of this state, the statute governing such associations being now found in the Agricultural Code (§§ 1191 et seq.), having been taken directly from the Civil Code (§§ 653bb et seq.). Inasmuch as there was no change other than in the creation

of a separate code, we will cite the law by reference to the appropriate sections of the Agricultural Code only.

The general scheme of cooperative association is found in the Agricultural Code, constituting chapter VI thereof, and embracing sections 1191 to 1221, inclusive. Section 1200 provides that each association formed under the provisions of the chapter shall adopt for its government and management a code of by-laws not inconsistent with the chapter. This same section 1200 provides that:

"Each association, under its by-laws, may provide for any of the following matters:

"(j)   The number and qualification of members or stockholders of the association and the conditions precedent to membership or ownership of common stock; the method, time and manner of permitting members to withdraw or the holders of common stock to transfer their stock; the manner of assignment and transfer of the interest of members and of the shares of common stock; the conditions upon which, and time when, membership of any member shall cease; the automatic suspension of the rights of a member when he ceases to be eligible to membership in the association; and the mode, manner and effect of the expulsion of a member; the manner of determining the value of a member's interest and provision for its purchase by the association upon the death or withdrawal of a member or upon the expulsion of a member or forfeiture of his membership, or at the option of the association, the purchase at a price fixed by conclusive appraisal by the board of directors; and the conditions and terms for the repurchase by the corporation from its stockholders of their stock upon their disqualification as stockholders. In case of the expulsion of a member, and where the by-laws do not provide any procedure or penalty, the board of directors shall equitably and conclusively appraise his property interest in the association and shall fix the amount thereof in money, which shall be paid to him within one year after such expulsion."

The defendant association, here involved, did adopt by-laws. The particular by-laws around which the controversy centers are as follows:

By-law No. 8.   Property Rights and Interests:   The property rights and interests of each member shall be unequal, that is to say, the interest of each member in the property of the Association shall be in the same proportion as the amount contributed or paid into the Association by him for handling

his products, during the term of five years immediately prior thereto, bears to the total amount paid in or contributed to the Association by all of the members of the Association for handling their products, and such interest shall be payable upon liquidation of the said Association.

And as regulating the amounts to be paid in as membership fees, the following by-law was adopted, and stood as the governing law of the association:

By-law No. 9. Membership Fee: ''Each person upon becoming a member of the Association shall pay to the Association one-half cent per pound on every pound of butterfat delivered by him to the Association, or marketed or disposed of through the facilities provided by this Association; said sum to become due and payable on the first day of each and every month, and said sum shall be deductible by said Association from the sums due each member for milk delivered during the preceding month.''

The foregoing, with occasional addition, will serve as sufficient background from which the controversy may be reviewed.

The plaintiff had been a member of the defendant association, entitled to all privileges of membership under the by-laws. Acting within the scope of the said by-laws and in full compliance therewith, plaintiff chose to withdraw from membership and did so. While a member she had paid dues consisting of certain moneys deducted from the amounts received on her account by the association for milk which she had marketed through the association. Having withdrawn, she demands that the money paid in by her and remaining in the funds of the association be accounted for and her share thereof determined and paid to her.

The defendants concede that the plaintiff has some right or interest in the funds of the association, but claim that any distribution must, pursuant to the by-law hereinbefore set forth, be deferred until liquidation of the association. The trial court sustained the contention of defendants and determined that plaintiff was not entitled to any present accounting, nor was she entitled to have her liquidation rights presently determined.

The question here to be determined relates to the validity of the by-law on distribution of assets and rights of withdrawing members.

It may again be noted that plaintiff here is the assignee

of a large number of persons whose rights are unequal, and among whom, upon distribution, differences, both in sums due and in rights accruing, might arise. Many points are urged by the respective parties in support of the judgment and by way of attack thereon. But regardless of what form the attack takes, it always comes back to the one point, namely, the validity of the by-law. A determination of this point will dispose of the appeal and render unnecessary further inquiry or consideration of the many other contentions made, whether in support of the judgment or contra. It is agreed that the association is a solvent, going concern and not in process of liquidation. ▇ The by-law questioned sets forth the interest of each member in the property of the association and provides that such interest in the property shall be payable upon the liquidation of the association. The first attack on the by-law is that the same is in direct contravention of the general law, inconsistent with the provisions of the chapter of the Agricultural Code, and that it is a by-law not within the power of the association to adopt.

The governing section (§ 1200, Agr. Code) provides that each association formed under the provisions of the chapter, under its by-laws, *may provide for* ". . . the manner of determining the value of a member's interest and provision for its purchase by the association upon the death or withdrawal of a member." Appellant argues that the permissive *"may"* becomes *"must"* and that no discretion nor alternative remains in the association in regard to its by-laws; in other words, that all associations are commanded to adopt by-laws and that such by-laws are set forth in the section quoted. ▇ It is conceded that in certain instances the word "may" has the effect of "must." But, ordinarily, the use of the permissive term carries no mandate. It is only where the context indicates or where the object to be attained compels such a construction that the imperative shall be deemed the legislative intent. ▇ The Legislature, in adopting the provisions setting up a voluntary non-profit organization, would not ordinarily cast the mandatory provisions in permissive form. If it had been the legislative intent to set up a rule of conduct for all such associations and to prescribe and limit the rights and liabilities accruing through membership therein, it would have done so without the unnecessary mechanics of separate by-laws for each organization to be thereafter formed. We note also that the subdivision of section 1200 quoted (subd. j) refers to by-laws governing ex-

pulsion and what the by-laws may provide in that respect. It is apparent that the term "may" does not mean "must" in the latter case, for the obvious reason that provision is made for the expelled members in cases where the by-laws are silent. It is thus apparent that while the associations might or might not provide for immediate purchase and payment for the interests of members voluntarily withdrawing, it could not enforce expulsion without fair compensation.

We hold that the phrasing of the section does not compel or warrant the mandatory construction. We may then consider the general purposes of all such legislation and the end sought to be accomplished thereby. The general purpose is reflected in the name chosen to designate the association, viz., "Cooperative." It was the legislative plan, conforming to a then manifest public policy, to permit and encourage, without the hampering restrictions peculiar to profit corporations, the pooling of interests between those engaged in similar enterprises and the securing of united action for the common benefit. From the inception of these organizations the scheme was deemed to be for the personal benefit of the members only to the extent that the individual profited through the operation of the enterprise. Tomes have been written on the purposes of cooperative associations. But nowhere has it been argued that the paramount concern was the advancement of the individual interest, as such. There is no need to wander into history or trace the growth of the cooperative idea. Cooperative marketing associations have become an established factor in the economic plan of the country, fostered and encouraged by legislative enactment, judicial construction and administrative policy. Thus firmly implanted in our national scheme, courts will be reluctant to construe statutes so as to destroy such an agency without the consent of a majority of its members. It is conceded that the present rule of statutory construction and of judicial decisions looks toward the general policy of the law as distinguished from the rule of private property or private rights in the abstract. As far as these announced ideas may apply to the instant case, there seems to be a dearth of California authority. However, the subject has been quite fully discussed in other jurisdictions. (*Clear Water Citrus Growers Assoc.* v. *Andrews,* 81 Fla. 299 [87 So. 903] ; *Burley Tobacco Growers Co-op. Ass'n* v. *Tipton,* 227 Ky. 297 [11 S. W. (2d) 119] ; *Texas etc. Cotton Ass'n* v. *Lennox,* 117 Tex. 94 [297 S. W. 743]. See, also,

Hanna on Law of Co-operative Marketing Associations.) In Evans and Stokdyk on The Law of Co-operative Marketing, at page 84, we find it stated:

"The members' demand for service is responsible for the creation of them (facilities of the corporation) and any advantage he may claim is only in proportion to the use he makes of them. His purpose is not primarily that of acquiring property interest, but merely of providing a means of marketing his products during the period of his membership. There is no logical ground upon which he should be permitted arbitrarily to withdraw his interest at the expense of the life of the association."

In the case before us, plaintiff and her assignors have received in full all paid dues they were entitled to receive, namely, the benefits accruing to them from the organization and collective marketing during the period of their membership. The plan of the defendant association and its members was and is to expand further to the extent of procuring or erecting permanent plants and equipment, and the funds available therefor inure to the benefit of those who, at present, constitute the association and to those who may subsequently join therein. Plaintiff became a member by her own volition and submitted to the by-laws which are now attacked.

It would be a futile task to attempt any present accounting, in the absence of a right to distribution or payment, for the obvious reason that, in a going concern, the amount due upon future distribution would vary and become subject to the vicissitudes of the intervening period.

The questioned by-law, being in all respects valid and binding, is determinative of the rights of all parties to the present action.

The judgment is affirmed.

Appellant's petition for a hearing by the Supreme Court was denied July 29, 1942. Carter, J., voted for a hearing.