[Civ. No. 8627.   Third Dist.   Sept. 28, 1955.]

PLACERVILLE FRUIT GROWERS' ASSOCIATION (a Nonprofit Corporation), Plaintiff and Respondent, v. WINTON H. IRVING, as Executor, etc., Appellant; MARJORIE E. BARNETT, Defendant and Respondent.

Hughes & Maul, Geoffrey A. Hughes, George B. Maul and Charles F. Fogerty for Appellant.

Martin C. Baer for Respondents.

VAN DYKE, P. J.—Placerville Fruit Growers' Association, a corporation, brought an action in interpleader against Winton H. Irving, individually, Winton H. Irving, as executor of the estate of his father, James Andrew Irving, deceased, and against Marjorie E. Barnett, a sister of Winton.   It alleged that it had in its possession the sum of $3,379.75 to which the defendants in interpleader made conflicting claims; that this sum had been, by its board of directors, declared payable to the persons lawfully entitled thereto from "Unpaid Revolving Fund" credits appearing on its books in an account designated "J. A. Irving and/or Winton Irving Account."   Plaintiff asked that defendants be required to interplead and litigate their claims between themselves.   It paid the fund into court and was dismissed from the action.

Marjorie appeared, asserting that she was the sole owner of the "Revolving Fund" credits, including the specific fund referred to in the complaint. She alleged that the total revolving fund credits amounted to in excess of $13,000, of which that portion referred to in the complaint constituted a part. Winton appeared individually and as executor of his father's will. Individually he claimed to be the owner of all the funds involved; he also alleged that if the funds did not belong to him individually, then they were a part of the estate of James Andrew Irving, deceased, and should, therefore, be paid to him as executor.

The court found that Marjorie was the owner of the sum of $3,379.75 referred to in the complaint and that, as to the rest of the "revolving fund" credits, amounting to the sum of $10,026.64, the association held those funds in trust for her use and benefit in such manner that when the directors of the association should declare additional payments due from the "revolving fund" the payments so declared should be paid to Marjorie until the fund had been exhausted. From the judgment thereafter entered Winton appealed as executor only, and so it now stands finally adjudged that he had no individual interest in the subject matter of the litigation.

The association was a nonprofit fruit growers' association, its principal function being the marketing of the produce of its members. Its by-laws declared that in order to provide funds for its corporate purposes it could temporarily retain, from the proceeds of fruit sold, an amount for each box or other unit of fruit received for marketing; that the aggregate of the amounts so retained should be known as the "Revolving Fund"; that the members would be credited on the books with the amounts retained from them and that such credits should be known as "Revolving Fund credits"; that the revolving fund credits should be deemed to evidence an indebtedness of the association to the persons to whom credited and would be paid solely upon conditions set forth in the by-laws and without interest. The by-laws further provided that the board should from time to time determine the amount of money not then needed and hence available for payment of revolving fund credits. Such designated repayment funds would then be applied to the oldest unpaid credits. The association had long adopted and followed a policy of retaining such sums for a period of five years. Consequently, at the time of the death of J. A. Irving, father of the interested parties to this appeal, there was credited to him revolving

fund credits which had been withheld from him during the last preceding five years. The total of these amounts was the sum of $13,406.39, but when the action was brought the amount which the directors had declared payable pursuant to the by-laws was the sum referred to in the association's complaint, that is, the sum of $3,379.75. The by-laws further provided that the moneys retained for the revolving fund could be commingled with and used for corporate purposes as other moneys belonging to the association; that the funds need not be physically segregated or set apart or held for the revolving fund nor the revolving fund be deemed a trust fund held for the owners of the credits. In the event of dissolution of the association it was provided that the credits in the revolving fund would all become due but would be deferred in payment to other indebtedness of the association; and that if there remained any residue of assets after payment of the revolving fund credits such residue should be distributed equally among those who were members at the commencement of dissolution proceedings.

The general findings as to Marjorie's absolute ownership of the fund deposited in court and her beneficial interest in the property adjudged to be held in trust appear in the conclusions of law. In addition thereto and under the designation of "Findings of Fact" the court made the following more specific findings: That the $3,379.75 which the association had paid into court before its dismissal from the action represented amounts "retained by the Association during 1947, and declared payable from the revolving fund accounts of the decedent, J. A. Irving, in 1952, according to action taken by the Board of Directors of the plaintiff Association" and that there remained a credit balance in the J. A. Irving revolving fund accounts with said plaintiff of $10,026.64; that it had been stipulated in open court between Winton and Marjorie that the court's determination with reference to the ownership of the money paid into court should apply to the remaining revolving fund accounts; that the decedent had died July 3, 1952, and was then a member of the association and had been such since 1918; that he had served as president thereof for many years; that when he died there was standing to his "credit in the revolving fund accounts in the name of J. A. Irving with the association, and which constituted an indebtedness from the association to said J. A. Irving, the sum of $13,406.39"; that it was his intent and purpose that in the event of his death Marjorie would have and receive all of the

funds in the revolving fund accounts; that to effectuate this intent and purpose he wrote a letter March 1, 1948, to the directors of the association, reading as follows: "May I request that you keep this letter as a matter of record; instructing the Management of the Placerville Fruit Growers Association, at some future time, when the Great Creator calls me home, to pay when so ordered, and instructed by the then Board of Directors, my earnings of the Placerville Fruit Growers Association, which is being withheld for a period of five years, as well as the savings of the California Fruit Exchange set up in your books to my account. This is to be that which will be due me at the time of my passing. This is to be paid when due and so ordered by your Board of Directors to my Daughter Mrs. Margie E. Barnett—2129—Park Grove Avenue—Los Angeles—California. Upon the payment to her of the amount withheld at the time of my passing, the balance will then be due and payable to other party of the membership viz Winton H. Irving, as it is set up from the time of my passing; and the regular procedure will then prevail as to his membership and earned by him." The court found that the letter was kept in the files of the association; that on March 3, 1948, a resolution was passed to the effect that the decedent's request as contained in the letter be granted; that pursuant to that resolution the following was typed at the top of each sheet of the revolving fund ledger showing the decedent's account: "All unpaid revolving funds at time of death of J. A. Irving shall be paid to daughter Marjorie Barnett—see letter dated 3/1/48—Board Acceptance 3/3/48"; that decedent's instructions to the association had never been altered, modified or revoked by him; that on March 13, 1948, he wrote to his daughter Marjorie, sending her a copy of his letter to the association, and telling her to keep it and that "they have the original and the amount should be around $10,000 depending on the previous crop that I have had . . . just preparing if any thing should happen"; that decedent's estate was solvent and the credits in the "revolving fund" were not necessary to pay debts or expenses of the estate. The truth of the foregoing specific findings are not in dispute.

Appellant has stated the questions on appeal as follows:

"1. Does the direction by a creditor to his debtor to pay the debt to a third person cause the debtor to become trustee of his debt?

"2. May a trust be created in praesenti when the corpus or trust property is to be identified at the death of the settlor?

"3. May the theory of a trust be resorted to for the purpose of giving effect to an ineffective gift?

"4. Does the law of the so-called bank account, tentative or Totten trusts apply to cases other than those cases where a bank-depositor relationship exists?"

We think it unnecessary to discuss these four questions seriatim. In reality they attack the findings of the court that by what J. A. Irving did when he wrote the letters to the corporation and to Marjorie and by the actions of the board of directors of the corporation a trust was created. And we may state here that our view is that the court's findings must be upheld and its judgment affirmed.

Mr. Irving's intent and purpose in doing what he did cannot be gainsaid. In fact, appellant does not differ with the trial court as to what his intents and purposes were. Without regard to legal terminology, he stated the existence of a property right which he expected would continue in existence until he died. When he wrote to the association he knew exactly the condition under which the association retained from grower members, including himself, a portion of the returns from produce handled and, from statements which the by-laws required be given as to retentions, he knew exactly what the retentions amounted to and what sum had been retained each year. He knew the conditions under which the retentions were exacted, the use and purpose thereof, the method in which the funds so acquired by the association would be used and handled and the conditions under which he could expect recoupment. The funds were to be taken and used for corporate purposes and were to be retained by the corporation until the board of directors could ascertain that the corporation possessed surplus enough to justify a pro rata payment from surplus to members from whom the retentions had been exacted. When this should happen, and how much should be repaid, was and were matters wholly within the honest discretion and judgment of the directors. The property interest of members whose funds had been thus retained by the corporation was remarkably analogous to the property interest of shareholders in an ordinary commercial corporation and the determination of the time when and the amounts in which withdrawals from surplus would be made and paid over to members and the conditions under which and the considerations on which these things should be done are

almost the same as govern the declaration and payment by a commercial corporation of dividends to its stockholders. The same analogy follows through as to the disposition of the property interests of members whose funds had been retained if and when dissolution proceedings should be taken. Other than a right to expect, and under extreme conditions to enforce, the payment of surplus in recoupment of amounts retained, the members had nothing to say as to when surplus funds should be used for that purpose. Their property interests were evidenced by their contract with the association stated in the by-laws and by the revolving fund accounts which those by-laws required the association to keep. The stockholders' analogous interests are more conveniently evidenced by share certificates. In essence, however, a close analogy existed, as we have stated. That a property interest of this sort can serve as an appropriate and legal trust res is apparent. Appellant's objection or contention that the association was a mere debtor and therefore could not become trustee of its obligation to pay is beside the mark. The relation between the members whose fund had been retained by the corporation is far different from the conventional relation of debtor and creditor. This is so notwithstanding the nonexclusive declaration in the by-laws that the revolving fund credits should be deemed to evidence an indebtedness of the association to the respective persons to whom credited. Of course in a sense the credits might be taken to evidence an obligation somewhat in the nature of a debt, but the true relations between the association and its members whose funds it had retained, as spelled out by the provisions of the by-laws we have referred to, are not the simple ones of debtor and creditor.

There is no merit to the suggestion that a member's rights in respect of revolving fund credits could not be the subject matter of a trust. We think appellant misconceives the nature of the property interest involved.

". . . [A]n express trust has been shown to be a fiduciary relation in which the trustee holds property interests for the benefit of another. A property interest consists of rights, powers, privileges, and immunities with regard to a particular thing or particular things. Every express trust, therefore, necessarily involves a property interest or interests and a thing or things in which those property interests exist. . . .

"It is patent that in the creation of an express trust the first function of the settlor is to select a thing, tangible or

intangible, and an interest in that thing as the basis for his trust. . . .

"In the great majority of instances of attempted express trusts there will be no difficulty on this score. The settlor will state that he desires an absolute or specifically limited interest in a well described and identified thing as the subject-matter of his trust. For example, he will describe the trust res as the absolute interest in a definitely described share of stock in a named corporation." (Bogert, Trusts and Trustees, vol. 1, § 111.)

The trustor here described the trust res as an absolute interest in a definitely described thing, that is, his interest in the revolving fund credits evidenced by his account thereof kept by the corporation in its records. What that would amount to in dollar value at the time of the settlor's death could not at that time, of course, have been stated; but neither can a shareholder's interest in the assets of a corporation be ascertained *in futuro*. The settlor impliedly retained the right to take and to keep repayments made during his lifetime, but there is nothing violative of the law of trusts in that any more than in the case of a trustor creating a trust in shares of a corporation who retains the right to receive and to keep dividends declared during his lifetime. We think it would be unrealistic to hold that the settlor could not, when he wrote the letter to the corporation, then declare a trust in the property interest he held in sums retained, and under the by-laws to be retained. ■ We think the evidence supports the trial court's findings that by his letter, by the corporation's resolutions and actions and by the notice to Marjorie given by Irving, a trust was created in his interest in the revolving fund present and future, with the corporation consenting to act as trustee and with Marjorie's rights as beneficiary plainly declared. It was, of course, unnecessary that any party involved should use the words "trust, trustee, trustor" or "beneficiary." (Civ. Code, §§ 2221, 2222.)

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 23, 1955.