No. 46,245

MILLICENT CLAASSEN, as Executrix Under the Will and of the Estate of Emil D. Claassen, Deceased, *Appellant*, v. FARMERS GRAIN COOPERATIVE, a Kansas Corporation, *Appellee*.

(490 P. 2d 376)

Opinion filed November 6, 1971.

*C. Fred Ice*, of Branine, Ice, Turner & Ice, of Newton, argued the cause and was on the brief for appellant.

*Calvin McMillan*, of Kaplan, McMillan & Anderson, of Wichita, argued the cause and was on the brief for appellee.

*David W. Dewey*, of Wichita, was on the brief for The Wichita Bank for Cooperatives, *Amicus Curiae*.

The opinion of the court was delivered by

OWSLEY, J.: Plaintiff-appellant commences this action to recover a money judgment against the defendant-appellee based on credits earned by Emil D. Claassen, now deceased, during his lifetime as a member and patron of the defendant, a cooperative association.

After the depositions of the president of the board and the general manager of the defendant were taken, both parties filed a motion for summary judgment and the trial court, after a hearing thereon, sustained the defendant's motion, and from this ruling plaintiff appeals.

The correctness of the trial court's ruling is based on a proper construction of the Kansas Cooperative Marketing Act, K. S. A. 17-1601 through 17-1636.

, A recital of the facts necessary for a review of the trial court's ruling follows:

Emil D. Claassen became a member of the cooperative in 1960 or 1961 and from that time up to and including 1967, total dividends or earnings were prorated to Emil D. Claassen's account in the sum of $15,656.84 of which $6,343.04 was paid in cash or by common stock, leaving a balance of deferred dividends of $9,313.80 as of December 31, 1967. At the time of oral argument the parties informed the court that an additional $2,500 had been paid on the Claassen account. Emil D. Claassen died testate on January 24, 1968, and his surviving wife, Millicent Claassen, was duly appointed and qualified as executrix of his estate. She made demand, as executrix, for the payment of the deferred dividends, but the board of directors of defendant elected not to pay the same, claiming that the bylaws gave the directors discretion as to whether to allow or disallow such a claim. The general manager of the defendant stated: "When a member ceases to be a producer of agricultural products and ceases to be a landowner, then they are eligible." He also stated that the defendant did not pay the dividends because Mrs. Claassen was still a producer and she would be eligible when she ceased to be a producer. Settlement has been made with other estates, and particularly the John Sabin estate. The defendant's general manager knew Emil D. Claassen died and he continued to keep the account in his name although Mrs. Emil D. Claassen received a statement showing her dividends for 1968. Defendant has the money to pay the claim, is strong financially, and there is no question concerning its ability to pay. The defendant deducts the full patronage divi-

dends, both cash and deferred, from its income tax returns and the member pays the income tax on deferred dividends as well as cash dividends received by him; and Emil D. Claassen during his lifetime paid the income taxes, federal and state, on the whole of the deferred dividends whether they were paid to him or not.

The only dispute in the facts before the trial court was that the defendant claimed the payment of the dividends to the Sabin estate was a hardship case. We conclude that this disputed fact was not significant to the trial court in sustaining the defendant's motion for summary judgment, nor is it significant here on appeal.

Plaintiff first claims error in that the trial court sustained the defendant's motion for summary judgment without a pretrial conference or without permitting plaintiff to produce evidence refuting the testimony of defendant's witnesses. The record does not disclose that plaintiff objected to the hearing on the motion for summary judgment or asked for time to make further discovery. The plaintiff cannot now object to the ruling of the trial court. (*Bicknell v. Jones,* 203 Kan. 196, 453 P. 2d 127.)

An explanation of the meaning of "patronage ledger credit" is necessary to the court's decision. A cooperative is not a corporation organized to make profit for itself, but only for its "members as producers." (K. S. A. 17-1602.) As members buy and sell from the cooperative they acquire credits and these credits accumulate in a patronage ledger account. These credits are distinct and different from stock purchased by a member. Stock purchased by a member is not involved in this litigation. The "patronage ledger credit" is issued to a patron pursuant to the articles and bylaws of the cooperative association, particularly, Bylaw Article II, Section 3, which provides as follows:

"PATRONAGE LEDGER CREDITS. The board of directors is hereby authorized and empowered to establish patronage ledger credits as a payment of part or all of the patronage dividends due patrons. Such patronage ledger credits may be retired in whole or in part on a pro rata basis at face value, at any time, provided said patronage ledger credits are settled in the same order as originally recorded by years. All other debts of the association, both secured and unsecured, shall be entitled to priority over the patronage ledger credits. Upon the dissolution and winding up of the association in any manner, after the payment of all other debts, the patronage ledger credits shall then be paid in full or on a pro rata basis without priority, and next, all outstanding non-voting membership certificates shall then be paid in full or on a pro rata basis before any liquidation dividends are declared on account of the common stock."

By reason of the characteristics of these credits as defined by this bylaw, they are considered as capital investments as distinguished from debts. (*John Kelley Co. v. Comm'r.*, 326 U. S. 521, 90 L. Ed. 278, 66 S. Ct. 299; *Inscho v. Development Co.*, 94 Kan. 370, 146 Pac. 1014; *Best v. Oklahoma Mill Co.*, 124 Okla. 135, 253 Pac. 1005; *Oklahoma Wheat Pool Elev. Corp. v. Bouquot*, 180 Okla. 159, 68 P. 2d 97; *In Re Hawkeye Oil Co.*, [Del.] 19 F. 2d 151.)

The articles of incorporation of the defendant cooperative have no provisions concerning the effect of death on patronage ledger credits. In Article II, Section 5, of the bylaws, we find the following:

"SETTLEMENT OF ESTATES. Notwithstanding any other provision of these bylaws, the board of directors, at its discretion, shall have the power at any time to pay off, or retire, or secure a release or satisfaction of any common stock, nonvoting membership certificates, stock and patronage ledger credits for the purpose of facilitating the settlement of any estate in the case of death."

Plaintiff's argument is condensed in the following statement from her brief, on page 5, where she states:

"A by-law making it discretionary with a board of directors to settle or not to settle with deceased members is inconsistent with K. S. A. 17-1601-1636 and such a by-law which allows a board of directors to discriminate between members or between estates of deceased members is void."

We cannot agree with plaintiff's contention. Neither the articles of incorporation, nor the bylaws of the defendant provide for a mandatory payment of the patronage ledger credits to a decedent's estate, and unless the statutes require such a payment, plaintiff's argument fails. In view of this we must examine K. S. A. 17-1609 which reads as follows:

"Each association incorporated under this act must, within thirty (30) days after its incorporation, adopt for its government and management a code of bylaws, not inconsistent with the powers granted by this act. Each association under its bylaws may also provide for any or all of the following matters:

. . . . . . . . . . . . . . .

"(i) . . . the manner of determining the value of a member's interest and provisions for its purchase by the association upon the death of a member. . . ."

The plaintiff does not argue that the use of the word "may" in this statute has the effect of "must", but does argue that since the defendant did enact a bylaw as permitted by the statute it should definitely set out some method of settlement with the estate of a deceased member. Contrary to this reasoning we conclude that the defendant was not required to make provision for the immediate

payment to a deceased's estate in the absence of a mandatory provision of the statute requiring that such a payment be made. In reaching this conclusion we are supported by the well reasoned case of *Driscoll v. East-West Dairymen's Ass'n.*, 122 P. 2d 379 (Cal. App. 1942); for hearing denied see 126 P. 2d 467.

". . . The legislature, in adopting the provisions setting up a voluntary non-profit organization, would not ordinarily cast the mandatory provisions in permissive form. If it had been the legislative intent to set up a rule of conduct for all such associations and to prescribe and limit the rights and liabilities accruing through membership therein, it would have done so without the unnecessary mechanics of separate by-laws for each organization to be thereafter formed. . . ." (p. 381.)

The only Kansas case involving similar facts is *Loch v. Paola Farmers Union, etc.*, 130 Kan. 136, 285 Pac. 523, but it is of no aid to either of the parties to this lawsuit or the court for the reason that the bylaw adopted by the cooperative in that case provided for a mandatory retirement of the patronage dividend account upon a member dying or moving out of the locality.

Plaintiff stresses the fact that she must pay income tax on her patronage ledger credits and the defendant, after allocation of the credits, does not pay income tax on the credits, and by reason thereof the defendant is estopped from denying that it is liable to plaintiff. Although this may appear unfair, we conclude that it is not controlling on our decision for the following reasons: First, when a member joins a cooperative association he is charged with knowledge of its articles of incorporation, provisions of its bylaws, and the fact that he may be required to pay income taxes on deferred patronage dividends; and second, even though the payment of income taxes on the deferred patronage dividends which plaintiff is unable to obtain may offend logical reasoning, the mandate of the legislature controls this court.

Plaintiff further argues that the law requires that a bylaw should affect all members alike and if it does not affect all members alike it should be held invalid. (18 Am. Jur. 2d, *Corporations*, § 165, p. 697.)

Plaintiff points out that the defendant actually paid the Sabin estate and other estates at time of the member's death but refuses to pay the Claassen estate without cause. Officers of the defendant testified by deposition that the board of directors had discretion as to whether to allow or disallow her claim; that the defendant re-

lied on patronage dividends for expansion; that if the defendant was obligated to pay all requests similar to the plaintiff's it would seriously jeopardize the operation by reducing capital outlay; that defendant had to have the consent of The Wichita Bank for Cooperatives to pay outstanding deferred patronage credits since they owed a sizable mortgage to the bank; that they paid the Sabin estate because the estate did not own ground and it was a hardship case in that Mrs. Sabin had no capital on which to operate; and that the Dickey estate was paid because the land had been sold. If we agreed with plaintiff's contentions, we would be required to substitute our judgment for the judgment of the board of directors. This we are not inclined to do and conclude that we cannot become involved in the financial structure of this defendant to determine whether the board of directors acted reasonably under these circumstances.

Permeating each of the conclusions herein is the general consideration that cooperative marketing associations are fostered and encouraged by legislative enactment and judicial construction; that the inception of these organizations was deemed to be for the personal benefit of members only to the extent that the individual profited through the operation of the enterprise; and that the paramount concern was not the advancement of the individual interest as such. Furthermore, a member's demand for service is responsible for the creation of a cooperative association and as a means of marketing his produce during the period of his membership, and there is no logical ground upon which a member should be permitted to withdraw his interest at the expense of disturbing the financial condition or the life of the association.

Other contentions of the plaintiff have been fully considered and found to fall before the mandate of the statutes.

The judgment is affirmed.

SCHROEDER, J., not participating.