327 So.2d 212 (1976)
LAKE REGION PACKING ASSOCIATION, INC., et al., Petitioners,
v.
Flora Flynn FURZE, for Herself and As Guardian Ad Litem for Mary Lewis and Alice Ellingson, Etc., et al., Respondents.
No. 47410.
Supreme Court of Florida.
February 11, 1976.
Rehearing Denied March 31, 1976.
*213 Christopher C. Ford, Ford, Cauthen & Robuck, Tavares, for petitioners.
Robert E. Austin, Jr., Davis, McLin, Burnsed, Austin & Cyrus, and Henry L. Pringle, Leesburg, for respondents.
John A. Sutton and Peter N. Smith, Sutton, Wright & Smith, Orlando, and Jerome P. Weiss, Hamel, Park, McCabe & Saunders, Washington, D.C., for Winter Garden Citrus Growers Association, amicus curiae.
SUNDBERG, Justice:
This case comes to us by virtue of the jurisdiction vested in this Court pursuant to Article V, § 3(b)(3), Florida Constitution, by writ of certiorari to the District Court of Appeal of Florida, Second District. In its opinion in the case at bar the District Court concluded with this statement:
"Now, because this appears to be a case of first impression and one which may have considerable impact on Florida agriculture generally, and upon the citrus industry in particular, we consider it appropriate to say, and do hereby certify, that we this day pass upon a question of great public interest." Furze v. Lake Region Packing Association, Inc., 311 So.2d 183, 188 (2d D.C.A. Fla. 1975)
The District Court of Appeal not having set forth the question it so certified as being of great public interest, such question has been variously stated for the Court by the parties as follows:
"WHERE THERE IS NO ABUSE OF DISCRETION BY THE BOARD OF DIRECTORS OF A CITRUS COOPERATIVE, SHALL THEY BE REQUIRED BY THE COURT TO REVOLVE PATRON'S CAPITAL CONTRIBUTIONS (RETAINS)?" (Petitioners' statement of the question)
"NOTWITHSTANDING A FINDING THAT THE BOARD OF DIRECTORS OF AN AGRICULTURAL COOPERATIVE ASSOCIATION DID NOT ABUSE ITS DISCRETION IN CONTINUALLY REFUSING TO PAY TO FORMER MEMBER-PATRONS SUMS OF MONEY WITHHELD FROM SALES OF THEIR CITRUS FRUIT AND RETAINED BY THE ASSOCIATION, WHEN NO SUMS WERE BEING WITHHELD FROM SALES OF CITRUS FRUIT OF CURRENT MEMBER-PATRONS, CAN OTHER PRINCIPLES, i.e., EQUITY, BE APPLIED AND PROVIDE THE BASIS FOR A REQUIREMENT THAT THE DIRECTORS ADOPT A DEFINITE PLAN WHEREBY THOSE FORMER MEMBER-PATRONS *214 WILL ULTIMATELY BE PAID THE SUMS WITHHELD." (Respondents' statement of the question)
"ABSENT A FINDING OF IMPROPRIETY ON THE PART OF THE BOARD OF DIRECTORS OF AN AGRICULTURAL COOPERATIVE CORPORATION IS THE COURT JUSTIFIED IN MANDATING THE REPAYMENT OF RETAINS OF FORMER MEMBERS?" (Amicus curiae's statement of the question)
In the absence of certification by the District Court of Appeal and after carefully reviewing its opinion, we deem the question certified to be as follows:
WHERE THE ARTICLES OF INCORPORATION AND BYLAWS OF AN AGRICULTURAL COOPERATIVE FORMED UNDER THE LAWS OF THE STATE OF FLORIDA PROVIDE FOR DISTRIBUTION OF RETAINED, EXCESS RESERVES TO FORMER MEMBERS ONLY AT THE DISCRETION OF THE BOARD OF DIRECTORS OF SUCH ASSOCIATION MAY A COURT OF COMPETENT JURISDICTION INTERVENE TO CAUSE SUCH DISTRIBUTION IN THE ABSENCE OF A SHOWING OF ABUSE OF DISCRETION, FRAUD, BREACH OF TRUST OR ILLEGALITY ON THE PART OF SUCH DIRECTORS?
We answer the certified question as so framed in the negative.
The factual background and posture of the case as presented to the District Court of Appeal, Second District, is as set forth by Chief Judge McNulty in the opinion and we quote:
"As a tax exempt cooperative, appellee [petitioner herein], Lake Region markets the citrus produce of its patrons for a charge, remitting the proceeds from fruit sales to the respective growers.
"Appellants [respondents herein], who are non-current, former members of the cooperative, brought this class action seeking sums concededly withheld from them by the cooperative in a reserve account. Concluding that the time for repayment was to be determined by the directors' business judgment, the trial court found neither an abuse of discretion nor breach of trust in the directors' refusal presently to repay the accounts. We agree; but we must ultimately remand for further consideration as will more fully hereinafter appear.
"At the outset, however, an overview of the problem herein is almost essential to an understanding of our conclusions herein. We comment first on the pertinent cooperative function. While a cooperative form of organization provides advantages unavailable to the independent producer, it requires working capital and sufficient reserves to offset losses due to freezes or other contingencies. To establish such reserves a cooperative might either borrow money from outside sources (debt financing) or retain sums from members and patrons in order to accumulate working capital and reserves over a period of time (equity financing).
"In the case before us, since at least 1925 Lake Region has pursued the latter course and has charged its patrons such a fee, in addition to costs, in order to do so.[1] Earnings withheld by the cooperative as contributions to its reserve account were recorded as non-cash `allocations' to member and patron accounts. At the beginning of each fiscal year the board of directors set charges for the various services it was to perform for *215 members and patrons during the coming year. At the end of that fiscal year net margins or net losses were determined by subtracting operating and other costs from the income received from charges. The difference was added to or subtracted from each member or patron's allocated reserve account in an amount proportionate to his transactions with the cooperative during that year. Although no definite schedule was followed, excessive reserves were used to redeem the earliest unrefunded allocations on approximately a ten to twelve year cycle. The directors on these occasions of redemption, pursuant to their duties as set forth in the by-laws, `declared' such excess.
"[1.] Originally a 10 cents per box `retain' was charged and retain certificates were issued to contributing patrons. Virtually all of these certificates have been refunded; none are involved in this suit. Sometime in the early 1930's the cooperative shifted to a system of allocated reserves, with book allocations made in lieu of handing out retain certificates.
"A 1962 amendment to the internal revenue code, however, has caused considerable change in the cooperative's practice. As a consequence thereof, patrons' contributions to reserves since 1963 have designedly totaled less than the cooperative's net margins, and, with equal design, no contributions have been made since 1968. Moreover, no reserve allocations have been redeemed since 1963 and several letters by the president (now chairman of the board) clearly indicated that, until changed, the tax ramifications of the amendment would preclude repayment."
In amplification of the facts set forth by Chief Judge McNulty, we have also considered the fact that Mary E. Lewis and her husband became members of the petitioner association in 1953 at which time they entered into a "Member's Uniform Marketing and Production Agreement". They withdrew in 1957. The Member's Uniform Marketing and Production Agreement incorporated by reference the bylaws and all amendments thereto of the Association, making the same binding upon the parties to the Agreement. We also deem it important to our decision herein to recite the pertinent provisions of Article II of the Amended Articles of Incorporation of Lake Region Packing Association, Inc., setting forth the purposes for which the corporation was organized:
"The purposes for which this corporation is organized are to engage in any activity in connection with the producing, marketing, selling, preserving, growing, harvesting, processing, canning, packing, grading, warehousing, storing, handling, shipping, or utilizing of citrus fruit; or in the manufacturing or marketing of the by-products thereof; or in connection with any of the activities mentioned herein, in the manufacturing, purchasing, selling, hiring, or using of supplies, machinery, or equipment; or in the financing of any of the above activities; or in performing business or educational service on a cooperative basis for those engaged in agriculture as bona fide producers of citrus fruit; or in any one or more of the activities specified herein ..." (Emphasis supplied)
We believe the District Court to have been eminently correct in that portion of its opinion which concluded, based on the authorities therein cited, that judicial review of a cooperative's refusal to redeem would be available if the directors' refusal to repay constituted an abuse of discretion, a breach of trust or was based upon fraud, illegality or inequity. However, in the absence of any such impropriety, the decisions to date indicate that repayment rights do not vest until dissolution unless applicable bylaw provisions require earlier repayment.[1] The District Court agreed with the trial court that no such abuse, impropriety or bylaw provision was demonstrated on the record in this case. Notwithstanding *216 such conclusion the District Court then embarked upon general principles of equity to require the parties to agree upon some plan of scheduled repayment and if they were unsuccessful in this endeavor, the court reposed in the trial judge the obligation to formulate such a schedule. No authority for such procedure was cited and, in fact, the authorities cited by the District Court of Appeal expressly reject judicial intervention into such management decisions where no impropriety on the part of management is shown. In Florida, corporate directors generally have wide discretion in the performance of their duties and a court of equity will not attempt to pass upon questions of the mere exercise of business judgment, which is vested by law in the governing body of the corporation. Orlando Orange Groves v. Hale, 119 Fla. 159, 161 So. 284 (1935).
The special concurring opinion of Judge Grimes would tend facially to support the remand to the trial court, under the procedures outlined, on the theory that former tax treatment of such reserves under the Internal Revenue Code defined the obligation of the Cooperative to withdrawn members as a debt obligation, thereby supplying a legally enforceable duty upon the directors to commence some schedule of immediate repayment. There are two problems with this analysis, however. First, while the cases cited in Judge Grimes' special concurring opinion generally stand for the proposition that patronage refunds were not taxable to the Association in that they were essentially "pass through" items prior to 1962, the Tax Court of the United States has held that amounts of income retained by a fruit growers' exempt cooperative were not taxable as income to members in the year such sums were reserved and fund certificates issued. Carpenter v. Commissioner of Internal Revenue, 20 T.C. 603 (1953); aff'd, 219 F.2d 635 (5th Cir.1955). In that case income was allocated by the cooperative, at the sole discretion of the directors, for reserve purposes and was evidenced by revolving fund certificates issued to members without interest. Such certificates were redeemable only at the discretion of the directors with the approval of the cooperative's mortgagee, were junior to all of the debts of the cooperative, and had no market value. The court determined that although carried as an obligation to pay on the books of the agricultural cooperative, allocated retains were too indefinite in nature in the hands of a patron to have any market value subject to taxation. This is undoubtedly so because such retains (i) bear no interest, (ii) have no market value, (iii) can be transferred only with the consent of the cooperative, (iv) have no due date, (v) were at all times subject to depletion or complete elimination as a result of the exigencies of business, (vi) were, even upon dissolution, inferior to all other obligations of the cooperative, and (vii) were redeemable only at the discretion of the directors or upon dissolution. The second problem with such an analysis is that the characterization for Federal income tax purposes cannot be said to control the substantive character of a matter. For example, the tax treatment afforded to certain corporations under Subchapter S of the Internal Revenue Code does not make the business organization any less a corporation for purposes of state law, nor does the "fast write-off" provisions of the Internal Revenue Code and regulations with respect to deductions for depreciation determine the true useful life for valuation of depreciable assets.
Were it necessary to characterize allocated retains as "debt" or "equity", we believe their characteristics more nearly resemble equity than debt. However, we do not deem it necessary to categorize retained reserves as either equity or debt since their treatment is defined by the bylaws of the cooperative in force at the time sums were retained from respondents. The agreement under which respondents undertook to participate in the cooperative effort of the association through incorporation of the bylaws *217 by reference clearly spelled out the circumstances under which amounts would be retained for reserves and the method for distribution of such amounts. The fact that it had been the prior practice of the Association to revolve such retained reserves is not controlling in that the change in the tax law in 1962 provided a sufficient business judgment justification for the directors to discontinue the practice of revolving reserves as it had theretofore existed.
That does not mean that a forfeiture is worked upon the respondents or that recourse to the courts is foreclosed to them. Clearly, upon a dissolution of the association, respondents will be entitled to their proportionate share of any then-existing reserves after payment of all other superior obligations of the Association. In addition, at any point in time at which respondents can demonstrate that the directors of the Association abuse their discretion or breach their trust by establishing charges to the producers at an inordinately low rate in relationship to the competitive market, by permitting the accumulation of excessive reserves, or by any other conduct, respondents have recourse to the courts under the principles expressed in the cases herein cited governing the conduct of directors.
We believe this result not only comports with the existing law on the subject, but also fulfills the intent and purposes of an agricultural cooperative as expressed in the Amended Articles of Incorporation heretofore quoted. The plain purpose of agricultural cooperative associations is to advance the interests of active producers in the production and marketing of their crops. An agricultural cooperative is not in the nature of a business corporation in which the general public invests capital in the expectation of returns through appreciation in value or through dividends, nor is it an entity to which people lend funds in the form of bonds or debentures yielding a fixed sum by way of interest and return of the principal on a day certain.
Accordingly, the question herein certified having been answered in the negative, that portion of the District Court's opinion affirming the judgment of the trial court is affirmed, but the balance thereof, including the remand to the trial court, is quashed.
It is so ordered.
ADKINS, C.J., and BOYD, OVERTON and HATCHETT, JJ., concur.
ENGLAND, J., concurs in part and dissents in part with an opinion.
ENGLAND, Justice (concurring in part and dissenting in part).
I concur with the Court's decision in all respects, save one. I do not believe we have jurisdiction to review the district court's decision, or if we do have jurisdiction it is discretionary and I do not believe we should exercise it.
Justice Sundberg notes that the district court failed to certify to us any question. That omission should be fatal to our jurisdiction. I am strongly opposed to our rummaging through district court opinions to identify the one question we think the district court deemed to be of great public interest. For one thing, that technique is fraught with the danger that we may frame and answer the wrong question. By insisting that the district courts frame their own questions as the Constitution seems to require, we can intelligently exercise our initial discretion to consider whether the question requires an answer.[1] We can also insure a judicial meeting of the minds and avoid appellate effort which goes astray.
*218 For another thing, the rummaging technique provides too great a possibility for simple meddling. The Constitution was never designed to give this Court the right to pick an interesting legal question from the text of a district court's opinion merely because that court thought some portion of its decision was important. If the district court answers a question of great public interest, that court ought to be capable of framing the question it answered.
My concern for the potential evils of rummaging is less than hypothetical; it is warranted here. The question framed by Justice Sundberg may indeed be the important question on which the district court passed. Some might argue from the face of the district court's opinion that the question could as well be framed as whether a court of equity will provide relief from a stringent contract in the absence of fraud or the like, or whether the trial judge abused his discretion on the facts of this case. It doesn't matter greatly to me how the question is worded, since I seriously doubt that any great public interest is involved in any aspect of what the district court actually did in this lawsuit.
Judge McNulty noted below, and Justice Sundberg acknowledges that the law applicable to this lawsuit was probably settled in 1935 in Ozona Citrus Growers v. McLean, 122 Fla. 188, 165 So. 625 (1935). The "hard" facts in this case which cry out for equitable relief did not dictate the development of new law affecting the citrus industry, and none has in fact been developed here or below.[2] For this reason, as well as the fact that we were given no certified question by the district court, I would exercise my discretion to decline certiorari review.
NOTES
[1] Evanenko v. Farmers Union Elevator, 191 N.W.2d 258 (N.D. 1971); cf. Placerville Fruit Growers' Ass'n v. Irving, 135 Cal. App.2d 731, 287 P.2d 793 (Dist.Ct.App. 1955); Claassen v. Farmers Grain Cooperative, 208 Kan. 129, 490 P.2d 376 (1971); Ozona Citrus Growers' Ass'n v. McLean, 122 Fla. 188, 165 So. 625 (1935); Adams v. Sanford Growers' Credit Corp., 135 Fla. 513, 186 So. 239 (1938).
[1] Zirin v. Charles Pfizer & Co., 128 So.2d 594 (Fla. 1961).
[2] The district court did plough new judicial ground by both affirming the trial judge's conclusion that equitable relief is not available and also remanding the litigation for an equitable resolution not justified by the evidence. Neither the district court nor the majority here contend, however, that this novel procedure was the question of great public interest on which the district court passed.