[Civ. No. 19679  Third Dist., Sept. 2, 1981.]

TONY A. SANCHEZ et al., Plaintiffs and Respondents, v.
GRAIN GROWERS ASSOCIATION OF CALIFORNIA, Defendant
and Appellant.

C<span>ounsel</span>

Neumiller & Beardslee, James A. Askew and Robert J. Kahn for Defendant and Appellant.

Hanson, Bridgett, Marcus, Vlahos & Stromberg, Gerald D. Marcus, Ronald C. Peterson and Robert L. Rusky as Amici Curiae on behalf of Defendant and Appellant.

Brewer, Patridge & Morris, James M. Morris and Todd R. Moyse for Plaintiffs and Respondents.

## OPINION

**PHILLIPS, J.**[*]—Plaintiffs sued defendant, a nonprofit agricultural cooperative association, for money due, declaratory relief and an accounting. Plaintiffs are expelled members of the association.[1] The court entered judgment for plaintiffs, and defendant appeals.

The primary purpose of defendant agricultural association, as outlined in article I of its bylaws, was the processing, utilization and marketing of grain and grain sorghum crops produced by member-growers.[2] Operating on a nonprofit basis, the association returned any net proceeds realized to its members.

Such cooperative associations find statutory authorization in Food and Agricultural Code section 54001 et seq.[3] in order to, "(a) [p]romote ... the intelligent and orderly marketing of agricultural products through cooperation; (b) [e]liminate speculation and waste; (c) [m]ake the distribution of agricultural products between producer and consumer as direct as can be efficiently done; [and] (d) [s]tabilize the marketing of agricultural products." (§ 54031.)

Section 54111 of the code requires such associations to adopt a set of bylaws. If the association desires, the bylaws may prescribe an amount each member is required to contribute to meet the financial requirements for carrying on the business of the association. (§ 54119.) In the present situation, defendant provided for its financial needs by withholding a stipulated dollar amount for each ton of products marketed.

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]The named plaintiffs represent a class of expelled members.

[2]Dissolution proceedings were begun after the filing of the original suit.

[3]Unless otherwise indicated, all further statutory references are to the Food and Agricultural Code.

This money, known as "retains," was credited to one of two accounts (either the "Capital Revolving Fund" or the "Operating Revolving Fund"[4]) in the members' names (known as "Revolving Fund Credits").

Any retains determined by defendant's board of directors to be in excess of the association's financial needs were returned to the members according to the following bylaw provisions: "At the conclusion of each crop year, it shall be the duty of the Board of Directors to determine what moneys then in each of said Revolving Funds, including those retained for the Revolving Funds during such crop year, are then not needed, and will not be needed for the use of the Association. ... [¶] The amounts so determined not to be needed for the use of the Association will then be used for payment of the indebtedness evidenced or represented by the oldest (unpaid) Revolving Fund Credits, and not later than the annual meeting next succeeding the close of the season, the oldest indebtedness or Revolving Fund Credits shall, to the extent of the moneys available, be paid.... [¶] No payment of Revolving Fund Credits shall be made which would cause the book value of the assets of the Association, after payment, to be less than the indebtedness and liability of the Association, including indebtedness in respect of any Revolving Funds, or would cause the fair market value of the assets of the Association, after payment, to be less than the indebtedness of the Association, excluding indebtedness in respect of the Revolving Funds."

An association member may be expelled from the organization under rules established in defendant's bylaw, article III, section 1(d). These rules provide that even an expelled member retains a right to payment of money due. The bylaw states: "Any member may, for failure to comply with the Marketing Agreement, By-Laws or the rules or regulations of the Association, or because of the quality or nature of the products of such member, or for any cause or reason whatsoever, which the Board in its unlimited discretion shall deem sufficient, be expelled from the Association by resolution adopted by two-thirds vote of all the members of the Board, either with or without notice or hearing, as the Board shall deem best.... [A]*ll rights of the expelled member shall cease, except the right to be paid any sums that may be or become owing from the Association, which payment shall be due and made at the same time or times, that payment would have been due and the membership continued.*" (Italics added.)

---

[4]The term "revolving" refers to the fact that unneeded money "revolved" out and returned to the members.

Section 54122, allows association bylaws to provide for a method of valuing a member's interest upon termination of their membership. Section 54122 provides: "*The bylaws may prescribe the manner of determining the value of a member's interest and provision for its purchase by the association* upon the death or withdrawal of a member or *upon the expulsion of a member* or forfeiture of his membership, or at the option of the association, the purchase at a price fixed by conclusive appraisal by the board of directors; and the conditions and terms for the repurchase by the association from its stockholders of their stock upon their disqualification as stockholders. *In case of the expulsion of a member, and where the bylaws do not provide any procedure or penalty, the board of directors shall equitably and conclusively appraise his property interest in the association and shall fix the amount of his property interest in money, which shall be paid to him within one year after such expulsion.*" (Italics added.)

Pursuant to the authorization of section 54122, defendant instituted bylaw article III, section 2 which provides that a membership in the association has no intrinsic value. A member's only financial interest stems from his revolving fund credits. Payment of these credits is conducted in the same manner for both past and present members, subject to the board of director's determination that there are surplus retains for distribution. This bylaw reads: "In the event of termination of membership, regardless of how terminated, the Association shall not become or be, liable for the payment of any amount whatsoever because of the value of the property interest in the Association of the member whose membership is terminated. Each member is received into membership upon the express agreement on the part of such member, and upon the condition that the value of the property interest of such member in the Association, prior to dissolution of the Association whether by expulsion or otherwise, such member shall not be entitled to be paid anything as or for the value of the property interest of such member. [¶] The foregoing provisions are not for the purpose of penalizing any person whose membership shall become forfeited or otherwise terminated, but rather because no membership will have any intrinsic value. *It is intended that the Association shall conduct its business with moneys withheld for or invested in the Revolving Funds or other fund or funds, and said withheld or invested moneys shall be repayable in accordance with the provision hereof, regardless of the termination of membership.*" (Italics added.)

Plaintiffs' memberships were terminated in 1968 for failure to sign a marketing agreement. The following year plaintiffs sued to recover "re-

tains" allegedly wrongfully withheld by defendant. They asserted, in part, that the bylaws did not provide any procedure whereby an expelled member would receive his property interest in the association. It was also claimed that the ex-members' interests in revolving fund credits were illusory and that the association's bylaws were inconsistent with requirements of the Food and Agricultural Code. Defendant denied the claims and plaintiffs' interpretation of the relevant articles of incorporation and bylaws.

The trial court found in favor of plaintiffs. They held that defendant was attempting to unlawfully expel members without compensation. Defendant's bylaws, specifically article III, sections 1(d) and 2, were declared inconsistent with, and in violation of, section 54122, and as such null and void.

Section 54122 is the statutory provision allowing an association's bylaws to prescribe a *manner* of determining the value of a member's interest and *provisions* for its purchase by the association upon a member's expulsion. If the bylaws do not provide any *procedure* or penalty, then the board of directors is required to equitably and conclusively appraise the property interest in the association and pay the dollar value within one year after expulsion.

One of the two bylaws specifically declared by the court to be inconsistent with section 54122, article III, section 1(d), vests the board of directors with unlimited discretion to expel members and provides ex-members with the right to receive retains in the same manner as continuing members. The second, allegedly inconsistent, bylaw, article III, section 2, states that a membership has no intrinsic value and that revolving fund credits are paid, regardless of termination of membership, according to the provisions of article VIII for distribution of surplus retains.

The trial court held that these bylaws did not provide a "procedure" for handling an expelled member's interest as required by section 54122. It was also found that the bylaws did not provide a penalty. These determinations caused the alternate provision of section 54122 to be applicable, requiring the board of directors to appraise the ex-member's property interest and pay its value within one year of expulsion. The trial court found that defendant's board of directors had not complied.

The trial court ordered an accounting of defendant's books and records in order to determine the value of plaintiffs' property interests. Judgment was entered for the full book value of plaintiffs' Revolving Fund Credits as of the date of expulsion, with interest at 7 percent per annum from January 1, 1969, to April 4, 1980.

On appeal, defendant asks this court to construe section 54122 and the relevant bylaws. It asserts that the trial court's interpretation is erroneous and resulted in an improper order of immediate payment of Revolving Fund Credits, threatening the association's fiscal stability. The financial impact results from the fact that Revolving Fund Credits are paid from retains, the source of capital for the association's operation. Defendant's bylaws protect this pool of capital by allowing payment of retains only at the end of a crop year and then only upon the board of director's determination that, after deducting liabilities, there is a surplus. Defendant asserts that immediate payment of book value for Revolving Fund Credits prematurely removes capital; prevents plaintiffs from sharing liabilities; forces the remaining members to disproportionately assume liabilities; and gives expelled members a payment preference over members with older Revolving Fund Credits.

The present situation involves no factual dispute and, "[t]he interpretation of a statute, when the facts are agreed upon, is a question of law." (*Mount Vernon Memorial Park* v. *Board of Funeral Directors & Embalmers* (1978) 79 Cal.App.3d 874, 884 [145 Cal.Rptr. 275].) An appellate court is "required to give effect to statutes 'according to the usual, ordinary import of the language employed in framing them.'" (*In re Alpine* (1928) 203 Cal. 731, 737 [265 P. 947, 58 A.L.R. 1500], cited in *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) "It is generally accepted that corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts." (*American Center for Education, Inc.* v. *Cavnar* (1972) 26 Cal.App.3d 26, 32 [102 Cal.Rptr. 575].) Bylaws must "'be given a reasonable construction and, when reasonably susceptible thereof, they should be given a construction which will sustain their validity . . . .'" (*Olincy* v. *Merle Norman Cosmetics, Inc.* (1962) 200 Cal.App.2d 260, 272 [19 Cal.Rptr. 387].) Where the trial court's interpretation is based solely upon the terms of the written instrument, and where there is no conflict in the evidence, the appellate court is not bound by the construction. (*Parsons* v. *Bristol*

*Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

Our analysis of section 54122 and the relevant bylaws requires us to reverse the trial court's actions. It is our determination that the necessary "procedure" clearly is provided for in the bylaws. The association determined, and, upon joining, the members agreed, that a membership was to be without financial value and retains were to be distributed to all persons in a like manner, regardless of termination. As we mentioned above, such a system promotes financial stability, and, we feel, adequately deals with an expelled member's interest.

The trial court's memorandum of intended decision indicates that the court based its decision, in part, on language from *Mountain View, etc.* v. *California, etc.* (1937) 19 Cal.App.2d 227 [65 P.2d 80], and *Bogardus* v. *Santa Ana W. G. Assn.* (1940) 41 Cal.App.2d 939 [108 P.2d 52], saying in effect that, agricultural cooperative associations are trustees of reserve funds retained, and the undistributed surplus of the reserve fund is the property of members contributing thereto.

While the statement above is correct, it is inapplicable to the present situation, for both *Mountain View Walnut Growers Association* and *Bogardus* referred to *surplus* or net retains. The trial court's order, in the present case, required payment of retains prior to any determination that they were surplus. It is undisputed that retains declared to be surplus cannot be withheld from members, but prior to such a determination, members have no enforceable right to these funds. There is only a *potential* right of repayment, subject to the board of director's discretionary action.

Plaintiffs' claim, that the board of directors' discretion in declaring a redemption of Revolving Fund Credits renders these interests illusory, is without merit. The actions of the board are subject to good faith and reasonable business judgment. (§ 54040; Corp. Code, §§ 309, 7231; *Placerville Fruit Growers' Assn.* v. *Irving* (1955) 135 Cal.App.2d 731, 735 [287 P.2d 793].)

Had a determination been made in the present case, that the bylaws did not constitute a "procedure" under section 54122, then the alternative provisions of section 54122 would have been applicable and the

board of directors would be compelled to render an appraisal and tender payment within one year from the date of expulsion. The trial court, however, upon its determination that there was no procedure, instead ordered immediate payment of the book value of credits plus interest. Such an order ignored section 54122's statutory mandate and is improper.

■ Lastly, once the validity of the bylaw provisions are upheld under section 54122, plaintiffs are contractually bound by them. Both the membership application and marketing agreement state that members are bound by the bylaws and both indicate that there is no immediate right to repayment of Revolving Fund Credits. Cooperative agreements "are not simply agreements entered into with an agent ... [they] are essentially to and with all the other members of the ... association and the interests of every member rest upon the same foundation, and no member can be advantaged to the detriment of any other member...." (*California C. P. Growers* v. *Downey* (1925) 76 Cal.App. 1, 15 [243 P. 679].)

We have determined the bylaws to be valid under the provisions of section 54122 and as a consequence the plaintiffs are contractually bound by them.

The judgment is reversed.

Evans, Acting P. J., and Carr, J., concurred.

A petition for a rehearing was denied on September 30, 1981, and the following opinion was then rendered:

THE COURT.*—In announcing its decision, upholding defendant-agricultural association's bylaws, this court considered its prior decision in *Driscoll* v. *East-West Dairymen's Assn.* (1942) 52 Cal.App.2d 468 [126 P.2d 647], and found it adverse to plaintiff's position.

The issue presented in *Driscoll* was the propriety of an agricultural association's bylaw providing that the property rights and interests of members were *payable upon liquidation* of the cooperative association.

---

*Before Evans, Acting P. J., Carr, J., and Phillips, J.†

†Assigned by the Chairperson of the Judicial Council.

This bylaw was adopted pursuant to former section 1200, subdivision (j), now section 54122. Section 54122 provides, "*The bylaws may prescribe the manner of determining the value of a member's interest and provision for its purchase by the association* upon the death or withdrawal of a member or *upon the expulsion of a member* or forfeiture of his membership, or at the option of the association, the purchase at a price fixed by conclusive appraisal by the board of directors; and the conditions and terms for the repurchase by the association from its stockholders of their stock upon their disqualification as stockholders. *In case of the expulsion of a member, and where the bylaws do not provide any procedure or penalty, the board of directors shall equitably and conclusively appraise his property interest in the association and shall fix the amount of his property interest in money, which shall be paid to him within one year after such expulsion.*" (Italics added.)

The court, in *Driscoll*, held that, in the case of a member *voluntarily* withdrawing from an association, section 1200, subdivision (j) (§ 54122), did not require the bylaws to provide for a manner of immediate purchase and payment of the member's interest. Thus, a provision postponing payment until the liquidation of the association was satisfactory, despite its indefiniteness. The paramount concern is the continuation of the cooperative, not the advancement of an individual's interest. Arbitrary withdrawal of that interest is not permitted. (*Driscoll, supra*, 52 Cal.App.2d at pp. 472-474.) ▪ In the case of an expelled member, however, the Legislature provided greater financial protection. An association is authorized to provide a manner of repayment in the bylaws, but, if the bylaws are silent, or are so indefinite as to be the equivalent of silent (as with the "payment upon liquidation" provision above), then section 54122 provides an alternate method of payment, ensuring an expelled member "fair compensation." (See *id.*, at p. 473.)

In the present case, the bylaws were not silent. They provided that expelled members receive payment at the same time, and in the same manner, as continuing members. (Art. III, § 1(d).) The amount that members were to receive was calculated by the board of directors at the end of the crop year, and was based on the amount of money deemed to be in excess of the financial needs of the cooperative. (Art. VIII, § 5.) ▪ This determination was subject to tests of good faith and reasonable business judgment. (§ 54040; Corp. Code, §§ 309, 7231; *Placerville Fruit Growers' Assn.* v. *Irving* (1955) 135 Cal.App.2d 731, 735

[287 P.2d 793].) The fact that plaintiffs did not receive money upon expulsion is merely a result of the cooperative's financial condition; the bylaws themselves were proper.

Respondents' petition for a hearing by the Supreme Court was denied December 9, 1981.