[No. A122357. First Dist., Div. Four. Dec. 2, 2010.]

REBECCA SPIELMAN et al., Plaintiffs, Cross-defendants and Appellants, v.
EX'PRESSION CENTER FOR NEW MEDIA, Defendant,
Cross-complainant and Respondent.

[No. A123563 First Dist., Div. Four. Dec. 2, 2010.]

LAWRENCE YU et al., Plaintiffs, Cross-defendants and Appellants;
BRIAN CLARKE et al., Plaintiffs and Appellants, v.
EX'PRESSION CENTER FOR NEW MEDIA, Defendant,
Cross-complainant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II.C. and D.

COUNSEL

Grout Law Firm and Daniel A. Grout for Plaintiffs, Cross-defendants and Appellants in No. A122357.

Lange & Koncius, Joseph J. M. Lange and Jeffrey A. Koncius for Plaintiffs, Cross-defendants and Appellants in No. A123563 and for Plaintiffs and Appellants.

Duane Morris, Keith Zakarin, Eric J. Sinrod, Paul J. Killion and Michael J. Dickman for Defendant, Cross-complainant and Respondent.

OPINION

**RIVERA, J.**—In these consolidated appeals, plaintiffs in consolidated actions against Ex'pression Center for New Media (Ex'pression) contend the trial court misinterpreted a portion of the Education Code, wrongly granted Ex'pression's demurrer on the theory that certain of their claims were barred by the statute of limitations, and wrongly denied their motions for a directed verdict. We agree the trial court misinterpreted Education Code former section 94877, subdivision (a), and shall remand for further proceedings. In all other respects, we shall affirm.[1]

## I. BACKGROUND

Ex'pression is a private postsecondary educational institution in Emeryville, California, which offers courses in sound arts, digital visual media, and Web design and development. In 1998, Ex'pression received temporary approval to operate from California's Bureau for Private Postsecondary and Vocational Education (the Bureau), a part of the Department of Consumer Affairs. The Bureau approved Ex'pression as a California private postsecondary degree-granting institution in January 2001, authorizing it to offer bachelor of applied science degrees in comprehensive sound, comprehensive digital visual media, and Web design and development; and diplomas in comprehensive sound arts, digital visual media, and Web design and development.

On September 13, 2004, Rebecca Spielman, Anna Navone, Christopher Friend, Amanda Instone, Jillian Meador, and Bobby Cochran (collectively, the Spielman plaintiffs), all Ex'pression graduates, filed an action against Ex'pression and others (collectively, Ex'pression) for violation of Education

---

[1] In the unpublished portion of this opinion, we reject plaintiffs' contentions regarding the statute of limitations and the denial of their motions for directed verdict.

Code[2] former sections 94312, 94832, and 94875, as well as various other causes of action not relevant to this appeal. (*Spielman v. Ex'pression Center for New Media* (Super. Ct. Alameda County, 2008, No. RG04174927).) On the same date, Lawrence Yu, Brian Clarke, Brian Toomajian, Yuki Ikeda, Matthew Morales, Michael Elias, and Deron Delgado (collectively, along with Jason Ho, the Yu plaintiffs), all former students at Ex'pression, filed an action against Ex'pression. (*Yu v. Ex'pression Center for New Media* (Super. Ct. Alameda County, No. RG04175490.) Jason Ho was added to this action as a plaintiff in a first amended complaint filed December 1, 2004. The Yu plaintiffs' second amended complaint alleged a cause of action for violations of the Maxine Waters School Reform and Student Protection Act of 1989 (former §§ 94850–94882) (the Waters Act),[3] as well as other causes of action not at issue in this appeal.

The Spielman plaintiffs alleged that Ex'pression misrepresented to them that it would soon be nationally accredited, that they would graduate from Ex'pression with degrees from a nationally accredited institution, that their degrees and credits would be transferable to other accredited institutions, that Ex'pression had a "100 percent" job placement rate, that it was highly regarded by Bay Area employers and would provide meaningful career placement assistance, that its education would allow plaintiffs to obtain employment in their fields of study, that plaintiffs would be eligible for government student loans or that they could apply for such loans retroactively, and that when Ex'pression became accredited, plaintiffs' degrees would retroactively be deemed accredited. The Yu plaintiffs similarly alleged that before they enrolled, defendants made various false representations, including that Ex'pression was or soon would be fully accredited, that the Yu plaintiffs would receive valid associate of science or bachelor's degrees, and that the units earned at Ex'pression were legitimate and transferable.

Ex'pression demurred to the Yu plaintiffs' second amended complaint, contending, as pertinent here, that the cause of action for violations of the Waters Act was barred by the applicable statutes of limitations. Ex'pression argued that some of the plaintiffs (Toomajian, Morales, Elias, and Delgado) last attended Ex'pression on May 12, 2001, and that Ikeda last attended Ex'pression on July 20, 2001. According to Ex'pression, these plaintiffs were barred from pleading any claim with a three-year statute of limitations. The

---

[2] All undesignated statutory references are to the Education Code.

[3] The Waters Act was encompassed within the Private Postsecondary and Vocational Education Reform Act of 1989 (the Reform Act) (former § 94700 et seq.). The Reform Act became inoperative as of July 1, 2007, and was repealed as of January 1, 2008. (Former § 94999; Stats. 2004, ch. 740, § 7.)

trial court sustained the demurrer to this cause of action without leave to amend as to Toomajian, Morales, Elias, Delgado, and Ikeda.[4]

Ex'pression cross-complained against the Spielman plaintiffs and Yu, Ho, Ikeda, Elias, and Delgado, alleging they had defaulted on their tuition loan payments and asserting causes of action for breach of contract, open book account, account stated, money had and received, and quantum meruit.

The Yu and Spielman actions were consolidated. During trial, Ikeda and all the Spielman plaintiffs except Instone moved for a directed verdict on Ex'pression's cross-complaints on the ground that their tuition had been paid to Ex'pression by a third party, EJW, which was not a party to the consolidated actions, and that there was no evidence EJW had assigned to Ex'pression its right to collect on the loan amounts due to EJW. The trial court denied the motion.

The jury returned separate special verdicts as to each plaintiff.[5] We here summarize the special verdicts to the extent they are relevant to the issues on appeal.

On plaintiffs' claims under section 94877, subdivision (a),[6] the jury was asked to make several findings.

**Question No. 9(a):** The jury was asked whether, in connection with an agreement for a course of instruction, Ex'pression had presented to plaintiffs "information that was false or misleading relating to the school, to employment opportunities, or to enrollment opportunities in institutions of higher learning after entering into or completing courses offered by the school." The jury answered "[y]es" to this question as to Meador. It answered "[n]o" as to Cochran, Friend, Instone, Navone, Spielman, Clarke, Ho, and Yu.[7]

**Question No. 9(b):** The jury was asked whether Ex'pression had "[m]ade or caused to be made any statement to [plaintiffs] that was in any manner untrue or misleading, either by actual statement, omission, or intimation."

---

[4] The trial court also disposed of other claims. We shall discuss only the claims relevant to the issues raised on appeal.

[5] It appears that Morales and Elias were dismissed before trial; neither is a party to this appeal.

[6] Section 94877, subdivision (a) provided: "If an institution violates this article or Section 94832 or commits an act as set forth in Section 94830 in connection with an agreement for a course of instruction, that agreement shall be unenforceable, and the institution shall refund all consideration paid by or on behalf of the student."

[7] Ikeda asserted a defense under the Education Code to Ex'pression's claim for breach of contract; on this defense, the jury found Ex'pression made an untrue or misleading statement, but that it did not relate to a fact that was important to him.

The jury answered "[y]es" to this question as to Cochran, Friend, Instone, Meador, Navone, Spielman, Clarke, Ho, and Yu.

**Question No. 9(c)**: The jury was asked whether Ex'pression had "[e]ngaged in any false, deceptive, misleading, or unfair act with [plaintiffs] in connection with any matter, including Ex'pression's advertising and promotion, the recruitment of students for enrollment in Ex'pression, the offer or sale of a program of instruction, course length, course credits, the withholding of loan or grant funds from a student, training and instruction, the collection of payments, or job placement." The jury answered "[y]es" to this question as to Cochran, Friend, Instone, Meador, Spielman, Clarke, and Ho. It answered "[n]o" as to Navone and Yu.

**Question No. 10**: The jury was asked whether "any of the acts that [it had] found to have occurred in [its] response to Question No. 9 related to an important fact to [plaintiffs]." The jury answered "[y]es" to this question as to Meador. It answered "[n]o" as to Cochran, Friend, Instone, Navone, Spielman, Clarke, Ho, and Yu, and did not go on to answer the remaining questions.

**Question No. 11**: The jury was asked whether plaintiffs "actually rel[ied] on any of the act[s] that [it had] found to have occurred in [its] response to Question No. 9." It answered "[y]es" as to Meador.

**Question No. 12**: The jury was asked whether plaintiffs' "reliance on any of the acts that [it had] found to have occurred in [its] response to Question No. 9 [was] a substantial factor in causing [them] to enroll at, or remain enrolled in, Ex'pression." The jury answered "[n]o" as to Meador.

**Ex'pression's Cross-complaints**: On Ex'pression's cross-complaints, the jury found the following plaintiffs had breached their contracts with Ex'pression and that Ex'pression had suffered damages: Cochran (damages of $29,143.24); Friend (damages of $45,273.57); Instone (damages of $32,331.40); Meador (damages of $40,370.41); Navone (damages of $45,382.09); Spielman (damages of $47,381.95); Ho (damages of $41,642.35); Ikeda (damages of $38,857.38); and Yu (damages of $35,929.47).

Plaintiffs took nothing by their complaints, and the trial court awarded damages to Ex'pression as found by the jury.

## II. DISCUSSION

### A. *Abatement of Claims*

We first consider Ex'pression's contention that plaintiff's claims have been abated by the repeal of the Reform Act, including section 94877, effective January 1, 2008. (Former § 94999; Stats. 2004, ch. 740, § 7.)

■ The general rule is that " ' "[t]he unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. *The reviewing court must dispose of the case under the law in force when its decision is rendered.*" ' [Citations.]" (*People v. Bradley* (1998) 64 Cal.App.4th 386, 397 [75 Cal.Rptr.2d 244].) However, in 2009, the Legislature enacted section 94809.6 providing that, notwithstanding the repeal of the Reform Act, "any claim or cause of action in any manner based on the act that was commenced on or before June 30, 2007, whether or not reduced to a final judgment, shall be preserved, and any remedy that was or could have been ordered to redress a violation of the act on or before June 30, 2007, may be ordered or maintained thereafter." (§ 94809.6, subd. (a).) Moreover, "[t]he rights, obligations, claims, causes of action, and remedies described in subdivision (a) shall be determined by the provisions of the former Private Postsecondary and Vocational Education Reform Act of 1989 in effect on or before June 30, 2007, notwithstanding the inoperative status or repeal of the former [Reform Act] . . . ." (*Id.*, subd. (b).)

■ This language is unambiguous. It is clear that the Legislature intended to allow parties who, like plaintiffs here, initiated claims under the Reform Act before June 30, 2007, to continue to maintain those actions.

■ Ex'pression contends, however, that this result conflicts with Government Code section 9607, which provides: "(a) Except as provided in subdivision (b), no statute or part of a statute, repealed by another statute, is revived by the repeal of the repealing statute without express words reviving such repealed statute or part of a statute. [¶] (b) If a later enacted statute that deletes or extends the date of termination or repeal of a previously enacted law is *chaptered before such date of termination or repeal*, the terminated or repealed law is revived when the later enacted statute becomes operative." (Italics added.) Ex'pression argues that Education Code section 94809.6 is inconsistent with the italicized portion of Government Code section 9607, subdivision (b) because it was enacted after the effective date of the repeal of the Reform Act. We reject this contention. Education Code section 94809.6 did not "revive[]" the Reform Act; rather, the Legislature "preserved" those *claims* under the Reform Act that were pending on or before June 30, 2007. Accordingly, we will consider plaintiffs' appeal on the merits.[8]

---

[8] On August 20, 2009, Ex'pression moved to dismiss these appeals on the ground they had been abated by the repeal of the Reform Act. By separate order, we deny Ex'pression's motion to dismiss these appeals.

## B. *Elements of Cause of Action Under Section 94877, Subdivision (a)*

Before trial, Ex'pression filed a motion seeking a legal interpretation of the elements necessary to establish plaintiffs' Education Code claims, arguing that in enacting section 94877 the Legislature intended to incorporate the common law of misrepresentation. For purposes of this appeal, the relevant portion of section 94877 is subdivision (a), which provided: "If an institution violates this article [(the Waters Act)] or Section 94832 or commits an act as set forth in Section 94830 in connection with an agreement for a course of instruction, that agreement shall be unenforceable, and the institution shall refund all consideration paid by or on behalf of the student."

■ Section 94832, among other things, prohibited private postsecondary educational institutions from making or causing to be made untrue or misleading statements, either by actual statement, omission, or intimation; and from engaging in false, deceptive, misleading, or unfair acts in connection with any matter. (Former § 94832, subds. (a) & (b); see also former § 94730.) Section 94830 authorized the Bureau to refuse to issue or renew, or to revoke, an institution's approval to operate if the institution had, among other things, presented false or misleading statements to prospective students about the school, employment opportunities, or enrollment opportunities in institutions of higher learning. (Former § 94830, subd. (h); see also former § 94724.)

The trial court agreed with Ex'pression and, as reflected in the special verdict forms, required plaintiffs to show not only that Ex'pression had made the requisite false or misleading statements, presented false or misleading information, or engaged in false, deceptive, misleading or unfair acts, but also that the acts related to an important fact, and that plaintiffs relied on the acts and were induced by them to enroll or remain enrolled at Ex'pression, in order to prevail on their causes of action under section 94877, subdivision (a). Plaintiffs contend on appeal that the trial court erred in requiring them to show materiality, reliance, and causation in connection with their claims and defenses under section 94877, subdivision (a).

■ We begin with the fundamental rules of statutory interpretation. "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.] When ' "statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' [Citation.] The plain meaning of words in a

statute may be disregarded only when that meaning is ' "repugnant to the general purview of the act," or for some other compelling reason . . . .' [Citation.]" (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140] (*DaFonte*).)

██ Ex'pression asks us to infuse into the provisions of section 94877, subdivision (a), all of the elements of the common law cause of action for misrepresentation: that is, the elements of materiality, reliance, and causation. But these elements are not included in the plain language of the statute, which is clear and unambiguous: if an institution commits any of the acts in question, the agreement for a course of instruction is unenforceable and the institution must refund all consideration paid "by or on behalf of the student." (Former § 94877, subd. (a).) Accordingly, we cannot, absent some compelling reason, add to the statute additional requirements.

This conclusion is bolstered by *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353 [17 Cal.Rptr.3d 39] (*Goehring*). As relevant here, the court in *Goehring* considered whether a private right of action under Business and Professions Code section 6061 was governed by the one-year statute of limitations for an "action upon a statute for a penalty or forfeiture" (Code Civ. Proc., § 340, subd. (a)), or the three-year period for an "action upon a liability created by statute, other than a penalty or forfeiture" (*id.*, § 338, subd. (a)). (See *Goehring*, at p. 374.) Business and Professions Code section 6061 requires any unaccredited law school to provide a disclosure statement containing certain information and provides: "The disclosure statement required by this section shall be signed by each student, who shall receive as a receipt a copy of his or her signed disclosure statement. If any school does not comply with these requirements, it shall make a full refund of all fees paid by students." (Bus. & Prof. Code, § 6061, 10th par.) The Court of Appeal noted that a penalty is " ' " ' "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former" ' " ' [citation]" (*Goehring*, at p. 386), and concluded the purpose of the refund provision of Business and Professions Code section 6061 was "penal in nature, as *actual damage is not an element of the claim. Rather, to obtain a refund of tuition a plaintiff need only show the law school did not timely comply with disclosure requirements*" (*Goehring*, at p. 387, italics added).

Ex'pression tries to distinguish *Goehring* on the ground that the jury there found the law school had knowingly and recklessly made false representations with the intent to defraud the plaintiff students, and that the plaintiffs had justifiably relied on the misrepresentations. (*Goehring, supra,* 121 Cal.App.4th at p. 362.) These findings, however, were made in connection with the plaintiffs' fraud claims, rather than their statutory cause of action for

refund of tuition and fees. (*Ibid.*) They did not form part of the Court of Appeal's reasoning concluding that Business and Professions Code section 6061 was penal in nature and that to obtain a refund, the student need only show that the school did not comply with the disclosure requirements. (*Goehring*, at pp. 386–387.)

Ex'pression also contends—and the trial court agreed—that the provisions of section 94877, subdivision (a) are less clearly penal in nature than those of Business and Professions Code section 6061. According to Ex'pression: "[W]hile both statutes involve tuition refunds, [Business and Professions Code s]ection 6061 directly links violation of the statute to the refund . . . . In contrast, [Education Code s]ection 94877(a) ties violation of the referenced Reform Act provisions to the unenforceability of the enrollment agreement, with the refund as the remedy." We find this distinction unpersuasive. Both statutes require the school to refund tuition if it violates the statutory provisions. Section 94877, subdivision (a)'s additional provision that an agreement for a course of instruction is unenforceable if the institution commits the violations does not change that fact.

Ex'pression relies on *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236 [78 Cal.Rptr.2d 566] to argue that section 94877, subdivision (a) does not provide for a penalty; but *Prudential* is inapposite. The court in *Prudential* looked to three factors to determine whether sums imposed under a statute constituted a penalty or forfeiture governed by the one-year statute of limitations or were remedial in nature and governed by a longer limitations period. These factors were (1) whether the statute's language characterizes the sums as a penalty or forfeiture, (2) whether the legislative history refers to the sums as a penalty or forfeiture, and (3) whether the sums are imposed without reference to the actual damage sustained by the plaintiff. (*Prudential*, at pp. 1242–1243.) The question before us, however, is not whether to apply the statute of limitations for a penal provision or for a remedial provision; it is whether the Legislature incorporated within section 94877, subdivision (a) a requirement that the plaintiff show the elements of a cause of action for misrepresentation.

Ex'pression also cites authority for the proposition that, as a general rule, statutes should be interpreted in light of common law rules, unless their language clearly shows an intention to depart from those rules. (See *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [65 Cal.Rptr.2d 872, 940 P.2d 323] (*Health Facilities*).) Under this rule, " '[t]here is a presumption that a statute does not, by implication, repeal the common law.' " (*Ibid.*; see also *Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1407 [106 Cal.Rptr.3d 691].) This unexceptionable principle does not, however, lead to a conclusion that the

Legislature intended to incorporate within section 94877, subdivision (a) the elements of a cause of action for common law fraud. We acknowledge the Legislature's stated intent that one of the purposes of the Waters Act was to prevent harm to students because of the fraudulent, deceptive practices of institutions, and the Legislature's concern for students who have been induced to enroll through misrepresentations. (Former § 94850, subds. (b), (c) & (d).)[9] But this expression of legislative intent does not change the fact that the statute the Legislature actually adopted—section 94877, subdivision (a)—by its terms *does not* require a plaintiff to prove the elements of a cause of action for misrepresentation. We note, further, that the money to be paid under this provision is limited to a refund of tuition paid; the statute does not supplant or implicitly repeal the common law of fraud, which allows for consequential damages, but only adds an additional statutory protection for students. (Former § 94877, subd. (d).)

Finally, Ex'pression contends that any interpretation of section 94877, subdivision (a) that does not require a showing of materiality, reliance, and causation could lead to absurd results, for example by requiring a refund even if the only violation were the failure to use a 12-point font type for certain required language in the preenrollment disclosure statement. (Former § 94871, subd. (a)(9).) Whether or not a minor deviation from this requirement would support a claim that the institution had not substantially complied, the misrepresentations found to have been made here are not mere technical lapses. (See *Goehring, supra*, 121 Cal.App.4th at pp. 384–386.) Moreover, the law provides a limited remedy—a refund of consideration paid by the student—and only if the improper acts were committed in connection

---

[9] In section 94850, subdivision (b), the Legislature declared that "students have been substantially harmed and the public perception of reputable institutions has been damaged because of the fraudulent, deceptive, and unfair conduct of some institutions that offer courses of instruction for a term of two years or less that are supposed to prepare students for employment in various occupations. Students have been induced to enroll in these schools through various misrepresentations including misrepresentations related to the quality of education, the availability and quality of equipment and materials, the language of instruction and employment and salary opportunities . . . ." The Legislature also found that "[s]tudents who leave schools before the completion of instruction, often because of misrepresentations and inadequate instruction, do not receive adequate refunds of tuition for the instruction not received . . . ." (*Id.*, subd. (c).) The Legislature declared: "(d) It is the intent and purpose of this article to protect students and reputable institutions, ensure appropriate state control of business and operational standards, ensure minimum standards for educational quality, prohibit misrepresentations, require full disclosures, prohibit unfair dealing, and protect student rights. It is the intent and purpose of this article to save millions of dollars of taxpayer's funds from being misused to underwrite the activities of institutions that depart from the standards of fair dealing and the requirements of this article. [¶] (e) *This article shall be liberally construed to effectuate its intent and achieve its purposes.*" (*Id.*, subds. (d), (e), italics added.)

with an agreement for a course of instruction. (Former § 94877, subd. (a).)[10] In light of this limited remedy, and the statutory purpose of requiring full disclosure and fair dealing (former § 94850, subd. (d)), our interpretation is neither absurd nor " ' "repugnant to the general purview of the act" ' " (*DaFonte, supra*, 2 Cal.4th at p. 601).

Our conclusion in this case is also buttressed by the fact that there are similar statutes containing heightened consumer protections which have been found not to include the elements of common law fraud unless those elements are made express in the law. For example, state laws require that securities sales be "qualified" prior to being offered (Corp. Code, §§ 25110, 25120, 25130) and provide that purchasers of securities that have not been qualified may sue for return of the consideration paid, less any income received, or for damages if the purchaser no longer owns the security (*id.*, § 25503). "[These statutes] create liability affording the immediate purchaser several specific remedies. None of the above sections require scienter, negligence, or plaintiff's reliance. [Citation]." (*Bowden v. Robinson* (1977) 67 Cal.App.3d 705, 712 [136 Cal.Rptr. 871]; see *id.* at p. 714 ["[Corporations Code s]ections 25400, subdivision (d), and 25500 establish a statutory cause of action for fraud, however, conspicuously avoiding the requirement of 'actual reliance.' [Citation.] The Legislature is again expressing its intention to afford the victims of securities fraud with a remedy without the formidable task of proving common law fraud."].)

The Legislature is fully capable of expressing in the statutory language *those elements required to be proved in order to secure the statutory remedy.* (See, e.g., Corp. Code, § 25401 [making unlawful an offer to sell or buy a security by means of a communication that includes "an untrue statement of a *material* fact" (italics added)].) Perhaps the most salient example of this is found in the recent amendment to the unfair competition law (Bus. & Prof. Code, § 17200 et seq.) (UCL). "Before the November 2004 General Election, when the voters approved Proposition 64, California courts consistently held that liability for restitution under the UCL could be imposed against a defendant without any individualized proof of causation or injury; the

---

[10] A broader remedy was provided by section 94877, subdivision (b), under which "a student may bring an action for a violation of this article or Section 94832 or an institution's failure to perform its legal obligations and, upon prevailing, shall be entitled to the recovery of damages, equitable relief, any other relief authorized by this article, and reasonable attorney's fees and costs." As to the claims of those plaintiffs who asserted a cause of action under this provision, the jury was asked whether Ex'pression had committed the predicate acts (including making false and misleading statements); whether the acts related to an important fact; whether those plaintiffs actually relied on the acts; whether they were harmed; and whether their reliance was a substantial factor in causing the harm. There is no contention that in order to show *damages* under section 94877, subdivision (b), plaintiffs were not required to show materiality, reliance, and causation.

plaintiff needed only to show that the defendant engaged in a practice that was unlawful, unfair, or fraudulent and that the defendant may have acquired money or property by means of that practice. [Citations.] Proposition 64 changed this. It amended the UCL to provide that a private action for relief may be maintained only if the person bringing the action 'has suffered injury in fact and has lost money or property as a result of the unfair competition.' (Bus. & Prof. Code, § 17204.)" (*Steroid Hormone Product Cases* (2010) 181 Cal.App.4th 145, 154 [104 Cal.Rptr.3d 329].)

In sum, whether or not we are comfortable with the result, we can find nothing in the statutes under consideration that would invite or countenance the addition of elements that are not contained in the plain language, particularly where the law expressly states that "[t]he remedies provided . . . supplement, but do not supplant, the remedies provided under other provisions of law." (Former § 94877, subd. (d).)[11]

The question of the remedy remains. Plaintiffs Clarke, Ho, Ikeda, and Yu ask us to direct the trial court to enter judgment in their favor on their claims under section 94877, subdivision (a). As to Clarke, Ho, and Yu, however, the jury found against each of these plaintiffs on the question of materiality. It therefore had no occasion to reach the factual issues related to whether their causes of action were barred by the applicable statute of limitations, under which an action must be brought "within three years of the discovery of the facts constituting grounds for commencing the action." (Former § 94877, subd. (e).)[12] Accordingly, rather than directing the trial court to enter judgment on the remaining causes of action for violation of section 94877, subdivision (a), we shall remand to the trial court for appropriate further proceedings.

C., D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[11] This provision also negates Ex'pression's contention that the Education Code provisions must incorporate the common law elements of fraud because statutes " 'should be construed to avoid conflict with common law rules' " (*Health Facilities, supra*, 16 Cal.4th at p. 297), or because "[t]here is a presumption that a statute does not, by implication, repeal the common law" (*People v. Zikorus* (1983) 150 Cal.App.3d 324, 330 [197 Cal.Rptr. 509]). Obviously, subdivision (d) of section 94877 makes clear that the remedy provided neither conflicts with nor repeals remedies available under any common law causes of action.

[12] As to Ikeda, the procedural posture is different. The trial court had sustained without leave to amend Ex'pression's demurrer as to his cause of action for violation of section 94877, subdivision (a). The jury was asked to decide whether Ex'pression had violated this statute as to Ikeda, but only in order to decide his affirmative defense to Ex'pression's cause of action for breach of contract. As we are remanding for further proceedings in connection with the other plaintiffs' claims under section 94877, subdivision (a), we will likewise remand as to Ikeda for further proceedings consistent with the views expressed in this opinion.

*See footnote, *ante*, page 420.

## III. DISPOSITION

The judgment is reversed as to the claims and defenses of Cochran, Friend, Instone, Meador, Spielman, Clarke, Ho, Navone, and Yu under section 94877, subdivision (a), and as to Ikeda's defense to the cross-complaint under section 94877, subdivision (a). In all other respects, the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

Ruvolo, P. J., and Sepulveda, J., concurred.

On December 30, 2010, the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied April 13, 2011, S190394.