Filed 5/17/22  Picasso v. Merida CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| GUILLERMO GOMEZ PICASSO, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HUGO MERIDA, et al., <br><br> Defendants and Respondents. | B306385 <br><br> (Los Angeles County Super. Ct. No. BC665813) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Steven J. Kleifield, Judge.  Reversed and remanded with directions.

Rowena J. Dizon for Plaintiff and Appellant.

Dilip Vithlani for Defendants and Respondents.

————————————

# INTRODUCTION

This appeal arises from a dispute between board members of a nonprofit housing organization, Central American Relief Foundation, Inc. (CARF).

Appellant and long-time CARF board member Guillermo Gomez Picasso contends board president Hugo Merida held a secret "special meeting" on January 4, 2016 and installed a new slate of directors without notice to the existing board, in violation of quorum and notice requirements in CARF's bylaws. The putative new board liquidated CARF's real estate holdings and dissolved the organization. Picasso sued alleging the new board members misappropriated funds and he sought, among other relief, a declaration that he was a continuing director of CARF and the removal of the new board members installed at the January 4, 2016 special meeting.

Following a bench trial, the court did not address the legality of the January 4, 2016 special meeting but instead concluded Picasso's term of office ended in June 2017 when the new board held an annual meeting and formally voted to remove any directors not in attendance. The trial court found Picasso was not a director and had no standing to sue for removal of board members or misappropriation of assets.

We conclude that the January 4, 2016 special meeting was held in violation of CARF's bylaws and Picasso remains a director who has standing to bring an action. We remand to the trial court for further proceedings to determine the merits of Picasso's claims.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. CARF's Formation and Leadership Prior to 2016

CARF owned three apartment buildings in Los Angeles that provided low-rent housing to low-income individuals. Prior to 2016 CARF was led by four individuals: Maria Luisa Vela (appellant Guillermo Gomez Picasso's wife, who is now deceased), Charles Jeannel, respondent Hugo Merida and Picasso. Vela and Jeannel founded CARF in 1996. Vela and Merida were CARF's initial directors, and in March 1996 they voted to adopt CARF's bylaws. In late 1996 or early 1997 Jeannel also became a CARF director. Picasso was elected to the board of directors in 2009. Among their other duties, Jeannel helped find and finance CARF's property purchases, Merida handled CARF's tax returns and Vela oversaw day-to-day operations and property management of the organization with the assistance of Picasso and their son, William Vela.[1]

It is undisputed that as of the beginning of 2016 Vela, Jeannel, Merida and Picasso were CARF's only board members. Merida served as President, Jeannel as Vice President, Vela as Secretary and Picasso as Treasurer. By that time relations among the four directors were strained. Jeannel testified that under Vela's management CARF fell into significant arrears with a property lender causing CARF to file two bankruptcy petitions to save one of its properties from foreclosure. According to

---

[1] Because Maria Luisa Vela and William Vela share the same surname, to avoid confusion, we use Vela to refer to Maria Luisa and refer to William by his first name.

3

Jeannel, Vela believed Merida had been stealing from CARF accounts.[2]

On approximately January 1, 2016, Vela suffered a heart attack and was hospitalized in the intensive care unit. Picasso testified that while Vela was unconscious in an induced coma he discovered Merida and Merida's wife in the ICU trying to make Vela sign a paper. When Picasso intervened and stopped them, Merida yelled at Picasso and threatened to kill him. Picasso then obtained a restraining order against Merida.

Vela died on January 3, 2016.

## B. Merida Holds a Special Meeting Without Notice and Elects New Directors

On January 4, 2016, the day after Vela died, Merida held a "special meeting" at Merida's personal office; the meeting was not held at CARF's principal office in Los Angeles. The meeting was attended by Merida, Edwin Jacinto, Carlos Roberto Calderon and Dahlia Martinez (Merida's sister). Neither Picasso nor Jeannel received notice of this special meeting, and neither Picasso nor Jeannel was present. Picasso only learned of the meeting after the fact.

The special meeting minutes, as documented by Merida, stated "All are [*sic*] Directors of this Corporation according to the Bylaws of the Incorporation were present" and the board "resolved to elect" Jacinto, Calderon and Martinez to the Board. The special meeting minutes did not mention or purport to remove Picasso or Jeannel as directors.

---

[2]     In 2014 Vela filed an unrelated personal lawsuit against Jeannel that ultimately settled.

## C. The Purported New Board Sells CARF Property, Sues Jeannel and Votes To Remove Picasso and Jeannel from the Board of Directors

Hostilities between the new board and Picasso and Jeannel quickly escalated in January 2016. Within a few days after the January 4, 2016 special meeting, Merida sent a cease-and-desist letter on behalf of CARF to Picasso and William demanding they no longer collect rents or communicate with tenants and threatening them with a lawsuit. Soon after Merida orally demanded Picasso and William release all rental money they and/or Vela had collected. On February 6, 2016, the new board voted to remove Jeannel from CARF bank accounts.

Picasso hired a lawyer to address these issues. He did not attend any meetings conducted by Merida after Vela's death because he considered the meetings and the new board illegitimate.

In February and May 2016, the new board voted to sell all CARF's property. In the interim, in March 2016, the Board voted to sue Jeannel "for misrepresentation, disseminating false information about the officers and the administration of this organization."[3] Jeannel counter-sued for conversion, constructive fraud, "removal of a dishonest director," declaratory relief and other claims, stating that "the gravamen of this cross-complaint" is that Merida "hijacked" CARF "for his own personal benefit and looted corporate assets and opportunities." Jeannel's cross-complaint did not include or mention Picasso. Jeannel recorded a lis pendens on each of CARF's properties, all of which were expunged on May 17, 2017, when the trial court in Jeannel's case

---

[3] CARF's complaint against Jeannel is not included in the record on appeal.

5

granted each side's cross-motions for judgment and denied relief to all parties on the complaint and cross-complaint.

On June 6, 2017, the new board held an "annual meeting." At the meeting the board voted to remove all directors not in attendance—namely, Picasso and Jeannel.

On June 12, 2017, Picasso and Jeannel convened their own "special meeting" as the alleged legitimate directors of CARF. Picasso and Jeannel voted to remove Merida (who received notice but did not attend the meeting).

From January 2016 until June 2018, the new CARF board, led by Merida, met regularly without providing notice to Picasso or Jeannel. The new board also elected several new members. In June 2018 the board voted to dissolve CARF.

## D. Picasso's Complaint

Picasso filed his complaint on June 21, 2017. Picasso's operative Second Amended Complaint contained three causes of action for (1) declaratory relief declaring him a director; (2) removal of the alleged new directors; and (3) misappropriation of assets by Merida. Picasso named Merida and CARF as parties to the action, along with Doe defendants and several additional individual defendants who were purported new board members: Jacinto, Calderon, Sandra Pelaez, Aroldo Ramirez and Edwin Arango. Picasso alleged defendants were never properly elected directors of CARF because their "election" was in violation of numerous CARF bylaws including Merida's failure to give Picasso notice of the meetings during which the new directors were elected. Picasso also asserted he was never properly removed and remains a director of CARF. Picasso declared "there is now an impasse and deadlock between and among Plaintiff and the individually named Defendants as to who has

6

the authority to act on behalf of Central American Relief Foundation, Inc. in the capacity of a Director of the corporation" and asked the trial court to declare that Picasso remains a CARF director, remove the individual defendants as directors and appoint provisional directors. Picasso also alleged Merida misappropriated CARF assets.

In conjunction with his action Picasso recorded a lis pendens on the CARF real properties to prevent their sale. To further prevent Merida from selling the CARF real properties, in July 2017 Picasso and Jeannel created a new corporation called Calhousing Foundation. Without notice to Merida they transferred one of the CARF properties to Calhousing in October 2017 and then transferred it back to CARF a week later. The parties' lawyers later negotiated an agreement to sell the CARF properties before trial with the proceeds deposited in escrow, to be released after "the end of this case."[4] Picasso alleged Merida and his attorney breached the settlement agreement and pocketed the money from the escrow accounts.

### E. Trial and Statement of Decision

The court held a two-day bench trial on Picasso's action in November 2019. No court reporter was present. Merida did not attend and did not testify. Four witnesses testified: Picasso, Jeannel, William and Edwin Jacinto. Their testimony is summarized in the Settled Statement on appeal. After the close of evidence the trial court granted defendants' oral motion for nonsuit as to CARF on the misappropriation cause of action.

---

[4]     This information is included in the parties' Settled Statement. However, the negotiated agreement referenced in the Settled Statement was not included in the record on appeal.

7

On March 4, 2020, the trial court issued a tentative statement of decision concluding Picasso's term of office as a director ended on June 6, 2017, which was before Picasso filed his complaint, and he therefore lacked standing to sue. Picasso objected to the tentative statement on a variety of grounds, including the court's failure to address the legality of the January 4, 2016 unnoticed special meeting at which the purported new board was elected. Picasso argued there were three CARF directors when the meeting occurred but only one (Merida) was present and under those circumstances the board created on January 4, 2016 was not properly authorized to act for CARF in any capacity, including removing a director.

In its final statement of decision, the trial court did not discuss the January 2016 special meeting. Instead the court noted CARF's bylaws allowed a director to be removed without cause and stated "even if [Picasso] was a director as of June 6th, 2017, his term of office had ended, and he was not present to express his desire to be re-elected to the board" when the new board held an annual meeting (on June 6, 2017) and voted to remove any directors who were not present. The court also rejected Picasso's lack of notice arguments finding Picasso, as a board member, "knew, or should have known, when and where board meetings were to take place" but played "no role" in CARF from February 2016 through June 2017.

On May 5, 2020, the trial court entered judgment on its final Statement of Decision. Picasso timely appealed.

8

## DISCUSSION

### A. Standard of Review

To the extent the facts are undisputed a trial court's interpretation of organizational bylaws is "a question of law subject to independent review on appeal," applying usual rules of contract and statutory interpretation. (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 754-755 [medical staff bylaws]; accord *Concord Christian Center v. Open Bible Standard Churches* (2005) 132 Cal.App.4th 1396, 1408 (*Concord Christian Center*) [church bylaws]; *Singh v. Singh* (2004) 114 Cal.App.4th 1264, 1294 [corporate bylaws]; *Sanchez v. Grain Growers Assn.* (1981) 126 Cal.App.3d 665, 672 (*Sanchez*) [nonprofit agricultural cooperative association bylaws].) "By-laws should be so construed as to sustain their validity if possible." (*Olincy v. Merle Norman Cosmetics, Inc.* (1962) 200 Cal.App.2d 260, 272 (*Olincy*).)

A party's standing to sue is likewise a question of law ""to which we typically apply a de novo standard of review."" (*A.J. Fistes Corp. v. GDL Best Contractors, Inc.* (2019) 38 Cal.App.5th 677, 687, quoting *California DUI Lawyers Assn. v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1258.)

Because the facts relevant to standing and interpretation of the bylaws here are undisputed, we review de novo the trial court's determination that Picasso was not a director and lacked standing to sue. "To the extent our determination of this question depends on the judicial interpretation of the articles of incorporation, bylaws, and other governing documents . . ., we must apply neutral principles of law de novo. [Citations.]" (*Concord Christian Center, supra,* 132 Cal.App.4th at p. 1408.)

**B. Relevant Bylaw Provisions**

CARF's bylaws contain the following provisions relevant to this appeal:

***Corporate office location.*** Article 1 Section 1 designates CARF's "principal location for the transaction of its business" as 2975 Wilshire Boulevard, Suite One, Los Angeles, California 90010.

***Board terms and elections.*** Article 4 Section 4 ("Terms of Office") states: "Each Director shall hold office until the next annual meeting for election of the Board of Directors as specified in these Bylaws, and until his or her successor is elected and qualifies."

***Meeting location.*** Article 4 Section 7 ("Place of Meetings") states: "Meetings shall be held at the principal office of the corporation unless otherwise provided by the Board or at such place within or without the State of California which has been designated form [*sic*] time to time by resolution of the board of Directors. In the absence of such designation, any meeting not held at the principal office of the corporation shall be valid only if held on the written consent of all Directors given either before or after the meeting and filed with the Secretary of the corporation or after all Board members have been given written notice of the meeting as hereinafter provided for special meeting of the Board. Any meeting, regular or special, may be held by conference telephone or similar communicating equipment, so long as all Directors participating in such meeting can heard [*sic*] one another."

***Time and date of meetings.*** Article 4 Section 8 ("Date and Time of Regular and Annual Meeting") states: "Regular meetings of Directors shall be held on the first of each month at

10

pending time unless such day falls on a legal holiday, in which event the regular meeting shall be held at the same hour and place on the next business day."  "The annual Directors meeting will be held on the First Tuesday in June of every year at 10:00 a.m.  If this day is a legal holiday, the meeting will be held on the next day.  This meeting is for the purpose of electing directors and for transacting any other necessary business.  Director [*sic*] shall be elected by the Board of Directors. . . ."

*Special meetings.*  Article 4 Section 9 ("Special Meetings") states:  "Special Meetings of the Board of Directors may be called at any time and for any purpose.  These meetings may be called by either the president or the board of directors or upon request of 25% percent [*sic*] of the Directors of the corporation.  The request for a special meeting must be made in writing which states the time, place and purpose of the meeting.  The request should be given to the secretary, with copy to the registered agent of the corporation, who will prepare and send written notice to all Directors of record who are entitled to vote at the meeting."

*Notice of meetings.*  Article 4 Section 10 ("Notice of Meetings") states:  "Regular meetings of the Board may be held without notice.  Special meetings of the Boards [*sic*] shall be held upon four (4) days' notice by first-class mail or forty-eight (48) hours' notice delivered personally or by telephone or telegraph. . . ."  Article 4 Section 11 ("Contents of Notice") states: "Notice of meeting not herein dispensed with shall specify that place, day and hour of the meeting. . . ."

Article 4 Section 12 ("Waiver of Notice and Consent to Holding Meetings") states:  "The transactions of any meeting of the Board, however called and notice or wherever held, are as valid as though the meeting had been duly held after proper call

11

and notice, provided a quorum, as hereinafter defined, is present and provided that either before or after the meeting each Director not present signs a waiver of notice, a consent to holding the meeting, or an approval of the minutes thereof.  All such waivers, consents, or approvals, shall be filed with the corporate records or made part of the minutes of the meeting."

***Quorum.***  Article 4 Section 13 ("Quorum for the Meetings") states:  "A quorum consist [*sic*] of two Directors."

The same section provides:  "Except as otherwise provided in these Bylaws or in the Articles of Incorporation of this corporation, or by law, no business shall be considered by the Board at any meeting at which a quorum, as hereinafter defined, is not present, and the only motion which the Chair shall entertain at such meeting is a motion to adjourn from time to time until the time fixed for the next regular meeting of the Board."

Article 4 Section 14 ("Majority Action as board Action") specifies that "Every act or decision done or made by a majority of the Directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors."

The bylaws also provide meetings "shall be governed by Robert's' [*sic*] Rules of Order, as such rules may be revised from time to time," to the extent not in conflict with CARF's bylaws and articles of incorporation or other provisions of law.  Robert's Rules of Order provides that "In the absence of a quorum, any business transacted . . . is null and void."  (Robert's Rules of Order (2020) § 40:6, p. 330.)

***Removal of directors.***  Article 4, Section 17 states:  "If this corporation has no members, Directors may be removed without cause by a majority of the Directors of the office. [¶]

12

Vacancies on the Board may be filled by approval of the Board or, if the number of Directors, then in office is less than a quorum, by (1) the unanimous written consent of the Directors then in office, (2) the affirmative vote of a majority of the meeting held pursuant to notice or waivers of notice complying with this Article of these Bylaws, or (3) a sole remaining Director."

### C. The January 4, 2016 Special Meeting and Election of New Board Members Occurred in Violation of the Bylaws

Our inquiry begins with this threshold question: Was the January 4, 2016 special meeting and election of new board members valid under CARF's bylaws?

Picasso asserts the January 2016 special meeting was invalid because it violated the quorum and notice provisions of CARF's bylaws and contends all subsequent corporate activity conducted by the new board was unauthorized. Specifically he argues the trial court improperly ignored the legal significance of Merida's failure to give the only other board members (Picasso and Jeannel) notice or obtain a quorum for the January 4, 2016 special meeting during which the new board members were purportedly elected. According to Picasso, because the special meeting failed to comply with CARF's bylaws the meeting was a nullity and nothing that occurred at that meeting had any legal significance, including the election of the new board members. The domino effect is that all the subsequent acts of the purported new board members, including the removal of the directors who were not present at the June 2017 annual meeting, were similarly invalid. We agree.

In interpreting bylaws, as with any statutory or contract interpretation, we begin with the words themselves, giving them

"'their usual and ordinary meaning.'" (*Spielman v. Ex'pression Center for New Media* (2010) 191 Cal.App.4th 420, 428; see *Sanchez, supra,* 126 Cal.App.3d at p. 672 ["'It is generally accepted that corporate bylaws are to be construed according to the general rules governing the construction of statutes and contracts'"].) Where the language of a provision is "''clear and unambiguous there is no need for construction, and courts should not indulge in it.''" [Citations.]" (*Spielman,* at p. 248; see *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524 ["'In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.' [Citation.] Thus, where "'contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.'" [Citation.]"].)

> ### 1. No notice of the special meeting time and location was provided to Picasso, and the meeting location was not held at CARF's principal location as required under the bylaws

It is undisputed Picasso received no notice of the January 4, 2016 special meeting and only learned about the meeting after the fact. Although the bylaws permit special meetings to be called for any purpose by "the president or the board of directors or upon request of 25% percent [*sic*] of the Directors of the corporation," the bylaws also plainly require "written notice to all Directors of record who are entitled to vote at the meeting" stating "the time, place and purpose of the meeting." Notice of special meetings must be provided four days in advance by first-class mail or 48 hours in advance if "delivered personally or by telephone or telegraph." Merida provided no

14

notice whatsoever regarding the special meeting he attempted to convene, which was a clear violation of the bylaws.

Merida also held the January 4, 2016 special meeting at his own office, not at CARF's principal location, in violation of the requirement that board meetings be held "at the principal office of the corporation unless otherwise provided by the Board" or designated "from time to time" by board resolution.

The only exception to the notice requirements under the bylaws is that meeting transactions "are as valid as though the meeting had been duly held after proper call and notice" if (1) a quorum, as defined under the bylaws, is present at the meeting and (2) "each Director not present signs a waiver of notice, a consent to holding the meeting, or an approval of the minutes thereof." Similarly, the only exception to the location requirements is that "any meeting not held at the principal office of the corporation shall be valid only if held on the written consent of all Directors" (or, for special meetings, "after all Board members have been given written notice" of the special meeting as set forth above).

A two-director quorum was not present at the special meeting, as discussed further below. Picasso received no notice of the time, location or purpose of the special meeting and those directors not present (i.e. Picasso and Jeannel) did not sign a waiver of notice, give written consent to the meeting or approve the minutes. Thus, the notice and location violations were not waived or ratified.

2. *No quorum was present for the January 4 , 2016 special meeting, as required under the bylaws*

CARF's bylaws plainly state that a quorum for a board meeting consists of "two Directors" and that "no business shall be

15

considered" absent a quorum.  If the board of directors convenes without a quorum, the votes of any directors present are "insufficient to hold a legal meeting or pass any resolution." (*Olincy, supra,* 200 Cal.App.2d at p. 273 [where four directors were required for quorum, group of three could not amend bylaws; purported amendment was "void and hence cannot afford a foundation for anything done" at later meeting]; see 62 Ops.Cal.Atty.Gen. 698, 699 (1979) ["A quorum is the minimum number of members who must be present at a meeting for business to be legally transacted"].)  "[T]he purpose of quorum requirements is to insure a right of consultation to minority interests and not to give to those minorities a veto power which can be used to paralyze the management of a corporation and frustrate the will of the majority of shareholders or directors." (*American Center for Education, Inc. v. Cavnar* (1978) 80 Cal.App.3d 476, 496, fn. 10 (*American Center for Education*); accord *Grimm v. City of San Diego* (1979) 94 Cal.App.3d 33, 39 ["'The requirement of a quorum is a protection against totally unrepresentative action in the name of the body by an unduly small number of persons'"], quoting Robert's Rules of Order (rev. ed. 1970) p. 16.)

It is undisputed that, after Vela's death on January 3, 2016, Picasso, Jeannel and Merida were the only existing CARF directors of record.  It is also undisputed that the only director in attendance at the January 4, 2016 special meeting was Merida.  One out of three directors is not a valid quorum under the CARF bylaws and is insufficient to conduct business.  Under the unambiguous and plain language of the CARF bylaws, the January 4, 2016 special meeting and purported election of new

16

board members violated the quorum, notice and location requirements of the bylaws.

> 3. *Because the January 4, 2016 special meeting violated CARF's bylaws, the purported election of new board members at the meeting was void*

Because there was not a quorum and notice to all board members, or a subsequent ratification, there was no "duly held" "special meeting" on January 4, 2016. Under the bylaws, "Vacancies on the Board may be filled by approval of the Board" but only an "act or decision done or made by a majority of the Directors present at a meeting duly held at which a quorum is present is the act of the Board of Directors." (Accord, Corp. Code, § 307, subd. (a)(8); cf. *American Center for Education, supra,* 80 Cal.App.3d at p. 488, fn. 5 [noting other "courts have held that the words 'duly assembled' require that each director either have received or waived notice"].) Without a valid meeting, there was no legitimate "act of the Board of Directors" to approve new board members.

Respondents' argument that CARF was historically accustomed to informally conducting its board meetings and organizational governance does not alter this court's conclusion. Merida asserts that Vela, as Secretary of CARF, called informal board meetings by phone as needed rather than hold monthly meetings. However, even nonprofits that dispense with certain corporate formalities and function like a closely held corporation must still meet quorum requirements for board action to be valid. (See *American Center for Education, supra,* 80 Cal.App.3d at pp. 488, 490-491 ["Meetings of boards of directors are valid where it has become customary for the board to convene such meetings without notice *but with a quorum present*"], italics added.)

17

Respondents argue, as they did in the trial court, that Article 4, Section 17 of the bylaws has a provision permitting "a sole remaining Director" to fill vacancies on the board without a quorum.  When read in context, the "sole remaining Director" provision is an exception that is plainly not applicable here.  In full, the subsection reads:  "Vacancies on the Board may be filled by approval of the Board *or, if the number of Directors then in office is less than a quorum, by* (1) the unanimous written consent of the Directors then in office, (2) the affirmative vote of a majority of the meeting held pursuant to notice or waivers of notice complying with this Article of these Bylaws, or (3) *a sole remaining Director*."  (Italics added.)

It is unambiguous under the CARF bylaws that two members of the board constitute a quorum for the purpose of conducting board business.  It is also undisputed that three individuals—Picasso, Merida and Jeannel—were the directors of record at the time of the January 4, 2016 special meeting, one more than needed for a quorum.  Therefore, the enumerated alternative options for filling board vacancies when "the number of Directors then in office is less than a quorum" do not apply.  Merida may have been the sole director in attendance at the special meeting, but he was not the "sole remaining Director" in office and had no authority to unilaterally elect new board members.

We agree with Picasso that Merida's individual action at the special meeting, without a quorum or notice to the other directors of record, was a nullity.  Without a quorum the purported election of new board members at the January 4, 2016 special meeting "was void and hence cannot afford a foundation

18

for anything done" thereafter.  (*Olincy, supra,* 200 Cal.App.2d at p. 273.)

### 4.  *Picasso's role as a CARF board member did not end on June 6, 2017, and he has standing to sue*

Despite Picasso's specific objections to the tentative statement of decision, the trial court did not directly address the question of the validity of the January 4, 2016 special meeting and election.[5]  Rather, it concluded that "even if he was a director as of June 6th, 2017, his term of office had ended, and he was not present to express his desire to be re-elected to the board" when the new board held an annual meeting and voted to remove any directors who were not in attendance.  The trial court also emphasized Picasso "ceased any participation in board matters" and "'played no role' in CARF from February 2016 through June 2017."

Standing to pursue claims against directors of a nonprofit corporation is circumscribed by statute.  (See, e.g., Corp. Code, §§ 5142, 5223, 5233.)  "Corporations Code section 5233, subdivision (c), . . . provides that a director of a nonprofit corporation may 'bring an action' to address self-dealing by

---

[5]  Although "[a] judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness" (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 (*Arceneaux*)), when a party has filed timely objections to a trial court's tentative decision, the doctrine of implied findings will not apply, and the reviewing court will not infer that the trial court decided facts or issues not addressed in the statement in favor of the prevailing party.  (Code Civ. Proc. § 634; *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58-59; *Arceneaux,* at p. 1133.)

another director; section 5142, subdivision (a), . . . provides that a director of a nonprofit corporation may 'bring an action to . . . remedy a breach of a charitable trust'; and section 5223, subdivision (a), . . . authorizes the superior court, 'at the suit of a director' of a nonprofit corporation, to remove another director for, among other things, fraud, dishonesty, or gross abuse of authority." (*Summers v. Colette* (2019) 34 Cal.App.5th 361, 365-366 (*Summers*).)

Picasso's standing to sue depends on whether he was a director on June 17, 2017, when he filed his complaint. (See *Summers*, *supra*, 34 Cal.App.5th at p. 374 [nonprofit director indisputably had standing under Corporations Code sections 5233, 5142, and 5223 at the time she instituted the action, and could continue the action even though she was subsequently removed]; cf. *Turner v. Victoria* (2021) 67 Cal.App.5th 1099, review granted Nov. 10, 2021, ___ Cal.___ (S271054) [nonprofit director had standing to sue under statutes for breach of a charitable trust, self-dealing transactions, and removal from office for misconduct but lost standing to continue the action once her term expired and she was not reelected], declining to follow *Summers, supra,* 34 Cal.App.5th 361, on question of removal *after* initiating an action.)

The CARF bylaws provide, in the conjunctive, that "Each Director shall hold office until the next annual meeting for election of the Board of Directors as specified in these Bylaws, *and* until his or her successor is elected and qualifies." (Italics added.) Article 4, Section 17 also provides that "Directors may be removed without cause by a majority of the Directors of the office." CARF's bylaws do not state that board member terms automatically expire on an annual basis unless renewed, and we

20

decline to read such an interpretation into the bylaws where none exists.  The plain and commonsense construction of the CARF bylaws is that board members serve on an ongoing year-to-year basis until a successor is validly elected or they are removed by a valid majority vote of the board, neither of which occurred here.

The trial court's judgment was based on its view that the June 17, 2017 board meeting, and the board action to remove directors who were not in attendance at that meeting, were valid under the CARF bylaws.  We disagree.  Whether the new board was authorized to conduct any business after the January 4, 2016 special meeting, including the removal of absent board members, depends on the legal validity of the special meeting and whether the election of new board members at that meeting was authorized.  (See *American Center for Education, Inc. v. Cavnar* (1972) 26 Cal.App.3d 26, 34, fn. 7 [whether a new board member counts toward quorum depends on the validity of that new board member's disputed election at a previous meeting].)  Where, as here, the election of directors is unauthorized, "[i]t follows, then, that *all* acts of the purported [] board of directors were unauthorized and consequently a nullity." (*Guardian Angel Polish Nat. Catholic Church of L.A., Inc. v. Grotnik* (2004) 118 Cal.App.4th 919, 927 [parish board of directors' failure to obtain diocesan approval of board election made purported board's subsequent acts unauthorized and invalid].)  "The parties thus are restored to the status quo ante." (*Ibid.*)

21

## DISPOSITION

The trial court's judgment is reversed and remanded for a new trial.  Picasso is to recover his costs on appeal.


WISE, J.*


We concur:


SEGAL, Acting P. J.


FEUER, J.

*      Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.